PHIL M. CANALE, JR., District Attorney General of Shelby
County and Robert M. Gray, County Court Clerk
of Shelby County, Appellants,

*v.*

RUBY STEVESON, Appellee.

458 S.W.2d 797.

(*Jackson,* April Term, 1970.)

Opinion filed October 5, 1970.

EUGENE C. GAERIG and THOMAS F. GRAVES, Assistant District Attorneys General, for Phil M. Canale, Jr.

JAMES C. BEASLEY, County Attorney, for Robert M. Gray.

HENRY H. HANCOCK and RONALD LEE GILMAN, Memphis, for appellee.

MR. SPECIAL JUSTICE JENKINS delivered the opinion of the Court.

This is a declaratory judgment action brought by complainant to have T.C.A. Sec. 39-1946 declared unconstitutional and void.

T.C.A. Sec. 39-1946 provides:

"It shall be unlawful for any person or persons to practice for a consideration fortune telling * * * and similar pursuits in the counties of this state whose population exceeds four hundred thousand (400,000) persons according to the federal census of 1950 and any subsequent federal census"

Violation of this statute constitutes a misdemeanor.

The Chancellor held that the statute is not void as a partial law; but that it is unconstitutional as arbitrary and capricious class legislation. From this decree both parties appealed, the complainant asserting that the the Chancellor erred in not decreeing that the foregoing statute is unconstitutional as a partial law; and the appellants contending that the statute is not arbitrary and capricious class legislation.

The validity of this Act was not challenged for thirteen years and remained the law of the land and Shelby County in particular for that period of time.

However, there dwelt among them one Ruby Steveson, who claimed to have clairvoyant powers and could peer into the future and in effect, compete with the present day fad of computerized astrology so popular in this land today where a prediction for the future may be read in a newspaper costing the pitiful sum of one devaluated thin dime, and where on Sunday, a week's prediction, including the comics in color and the news, for what it is worth, thrown in for good measure, may be bought for a quarter.

She indicated her desire of practicing her profession of fortune-telling by making application to the County Court

Clerk for a license and making profert of the legal fee in Tennessee of $750.00. However, the Clerk of the Court, one of the parties to this suit, relying upon the statute cited above, refused to issue her a license to practice the profession of fortune-telling in Shelby County.

The complainant, Ruby Steveson, filed a bill for declaratory judgment in the Chancery Court of that county, praying that the statute be declared unconstitutional on either of two grounds: (1) that it is a partial law; or (2) that it is arbitrary and capricious class legislation.

Now, why does the fortune-teller exist and flourish in this country? Why do people in this so-called enlightened age grab the daily newspaper to see what their sign of the Zodiac predicts for them that day?

One of the recent columns on computerized astrology had this solemn and sage prediction, "If * * * is your birthday—Sudden changes will upset your relationships with opposite sex. You could get married, find new romance, or lose an old one." This really covers the waterfront. How could the computer lose on this one? Under another prediction, it was said, "Romance.—Unfavorable time for letting romance interfere with business. Even phone call from beloved would be frowned on." How cruel can a computer get,—this brainy, heartless and passionless creation of man.

The record does not reveal how Ruby Steveson intends to tell fortunes, by palmistry, the reading of coffee grounds or tea leaves, crystal gazing, or by feeling of the subject's head bones. Whether or not she predicts the good, the bad, the indifferent or the ridiculous, she is going to have a hard time matching wits with the computer.

It is man's nature to be curious, to want to know the mysteries of life and what is in store for him. History is replete with his attempts to discover the pattern of his destiny. To be human is to be concerned about the unseen, the invisible, the future which are always more important than the seen, the visible, and the present. Sometimes, he has sought to know more than he ought to, and this has led to unhappiness for "in much wisdom there is much grief." Adam and Eve tried to climb the tree of knowledge by eating the forbidden fruit, and were kicked out of the Garden of Eden for their pains. This started our troubles, but we took no lesson therefrom, and man's appetite to enter the door of the temple of wisdom increased. He dreamed dreams and saw visions of what the future held.

To think of the wonder of the marvelous structure of reality in this present day of almost casual trips to the moon burdens an ordinary mind; but to contemplate the awesomeness of the mysteries of the future has driven brilliant men mad. The interest, the wonder, the question is ever present,—what's beyond tomorrow—tantalizing the imagination of man; for curiosity is the first and most simple emotion which we discover in the human mind.

Curiosity is not limited to man, but insofar as we know man is the only creature that worries about his future or the hereafter. He is the only one that can cry; tears being the safety valves of the heart when too much pressure is laid on it. On the other hand, man is the only creature endowed by the Creator with the gift of laughter when he is pleased or happy.

Fortune-tellers do not usually foretell the future as bad, for it is typical of man to want to hear good. There

appear before them the old, the young, the gay and the gray, of all races and creeds, all tormented about their dream of the future. The fortune-teller cannot solve it, —probably cannot foretell it,—but to those crying out for surcease from sorrow, even for the moment, they give hope for the future. We seek to look at life through rose-colored glasses or through the mellow moonshine of romance. The fortune-teller can make the future look better than the past, for actually things we worry about rarely ever happen.

But, we ramble. Let us resume and proceed with Ruby Steveson's trials and tribulations with the legal authorities of Shelby County.

The sustaining of complainant's contention that T.C.A. Sec. 39-1946 is void as a partial law depends upon the construction given the phrase "according to the federal census of 1950 and any subsequent federal census." The complaint asserts that this imposes a dual requirement before the statute can be made applicable to a particular county, i. e., the county's population must have been 400,000 persons according to the 1950 census as well as any subsequent census; that Shelby County was the only Tennessee county whose population exceeded 400,000 in 1950; therefore, Shelby is the only county that will ever be affected by the Act.

The other reasonable construction is to interpret the word "and" as meaning "or" thereby emasculating the dual requirement and rendering the statute valid. When a statute is capable of two such constructions, one which will render it valid and one which will void it, then that construction should be given it which will preserve its validity. *Kirk v. State* (1911), 126 Tenn. 7, 150 S.W.

83; *Henley v. State* (1897), 98 Tenn. 665, 41 S.W. 352; *Dugger v. Mechanics' & Traders' Insurance Co.* (1895), 95 Tenn. 245, 32 S.W. 5. Accordingly, interpreting "and" as "or" in the statute disposes of the dual requirement and allows either the federal census of 1950 or any subsequent federal census to determine the population classification. The classification is thus opened up so as to let in counties that might in the future achieve 400,000 population, even though but a single county, Shelby, was embraced within the class at the time of the enactment.

Of course, the substitution of the disjunctive "or" for conjunctive "and" is not a novel approach to the concept of statutory construction. This Court has previously recognized that the inaccurate use of "and" and "or" tends to infect statutory enactments; and that their meaning may be departed from and one read in place of the other in deference to the context, *Kirk v. State,* supra. The Chancellor's interpretation is therefore sustained as to that point. This, however, is not determinative herein.

The second issue is whether T.C.A. Sec. 39-1946 is arbitrary and capricious class legislation, thereby rendering it unconstitutional.

█ █ If a classification is enacted so as to confer upon a class the benefit of some special right or immunity, there must be some reason why that particular class should be the recipient of the right or immunity, the *Stratton Claimants v. Morris Claimants* (1890), 89 Tenn. 497, 15 S.W. 87; but as long as any possible reason can be conceived, although a poor one, *Bank of Commerce & Trust Co. v. Senter* (1923) 149 Tenn. 569, 260 S.W. 144, to justify the classification it will be upheld, *Ogilvie v. Hailey,* (1918), 141 Tenn. 392, 210 S.W. 645.

What is the reason for the classification found in this statute? Why did the Legislature confer this immunity from fortune-tellers upon the residents of the most populous urban county of the state? This Court cannot discern any reason for such an arbitrary classification.

The appellants insist that fortune-tellers tend to concentrate their activities in those counties with heavy population; and that the Legislature, by prohibiting their activities in counties with a population of 400,000 or more, effectually prohibited fortune-telling throughout the state. We cannot agree. If the Legislature had in fact intended to prohibit fortune-telling statewide, then it would have tried to do just that.

Another argument of the appellants concentrates on the assumption that at the time of the statute's enactment Shelby County was "prime for plucking" simply because it had a population exceeding 400,000. Such an argument and conclusion is entirely unwarranted.

It is difficult, if not impossible, to perceive any reasonable relationship between population and whatever evils might accompany fortune-telling. But if any such relationship does exist, it would seem more plausible that the areas ripe for fertile pickings would consist of the rural counties of the state where the fortune-tellers could prey upon the supposed gullibility of the residents, as opposed to the large metropolitan counties where the populace allegedly is more sophisticated in the ways of the world. In sum, there is no reason, not even a poor one, which can justify this classification.

Finally, the appellant Gray relies upon *Elliott v. Fuqua* (1947) 185 Tenn. 200, 204 S.W.2d 1016, as authority for upholding the validity of the classification. There,

the Legislature enacted a law regulating the use of fireworks in Davidson County only. In deciding that the classification was reasonable, this Court said:

"The record does not show what differences, if any, exist between this county (Davidson) and some other populous counties of the State, but we think there are such differences as would permit the Legislature to make the classification in question. We do know that there are many differences between this county and most of the other counties of the State."

Applying the rule of law enunciated in Elliott to the instant case, the Court must determine if there are any differences between the populous counties of the State (those with over 400,000 persons) and the rural counties such as would justify the classification made under T.C.A. Sec. 39-1946. Manifestly, there are no such differences as would permit the Legislature to make fortune-telling unlawful in counties with more than 400,000 persons but license this practice in all other counties of the state.

The assignments of error are overruled and the decree of the Chancellor is affirmed. The costs incident to this appeal are assessed against the appellants.

DYER, CHIEF JUSTICE, SMITH, SPECIAL JUSTICE, and CRESON and McCANLESS, JUSTICES, concur.