J G INDUSTRIES, INC., f/k/a Goldblatt Brothers, Inc., Plaintiff, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH *et al.*, Defendants (National Union Fire Insurance Company of Pittsburgh, Counterplaintiff-Appellant; J G Industries, Inc., f/k/a Goldblatt Brothers, Inc., *et al.*, Counterdefendants-Appellees).

First District (4th Division)  No. 1—90—3349

Opinion filed September 5, 1991.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellant.

Clifford A. Harstad, Ltd., of Chicago (Clifford A. Harstad and Sofia E. Goebel, of counsel), for appellee J G Industries, Inc.

Hayes & Power, of Chicago (Larry R. Rogers, of counsel), for appellee Jose G. Garcia.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from a declaratory judgment in favor of the plaintiff, J G Industries, Inc., holding that the defendant, National Union Fire Insurance Company (National Union), had a duty to defend J G against a lawsuit brought by its former employee, the

defendant Jose G. Garcia. The lawsuit contained separate counts seeking to recover damages for retaliatory discharge, libel and slander and punitive damages in connection with the retaliatory discharge theory. National Union counterclaimed for declaratory judgment and filed a motion for summary judgment in which it conceded that it had a duty to defend the libel and slander count, which had previously been dismissed, but alleged that the policy did not provide coverage for retaliatory discharge or punitive damages. The trial court granted summary judgment in favor of National Union and against J G with respect to the punitive damages count, but denied National Union's motion for summary judgment on the retaliatory discharge count finding that National Union was required to defend J G in the retaliatory discharge litigation. The court further awarded J G $3,200 in already incurred defense costs. National Union has appealed, contending that the trial court erred in finding that it had a duty to defend the retaliatory discharge action and in awarding defense costs attributable to that action.

This litigation arose when Jose G. Garcia filed a two-count complaint against Goldblatt Bros., Inc. (Goldblatt), J G's predecessor in interest. Count I alleged that Garcia suffered an injury during the course of his employment with Goldblatt and filed a worker's compensation action. The complaint alleged that Goldblatt discharged him in retaliation for his filing of the worker's compensation action. Count II alleged that Goldblatt, through its employee James Gentile, libeled and slandered Garcia by falsely accusing him of theft. The complaint was subsequently amended to add a third count, which sought punitive damages in connection with the retaliatory discharge theory.

During the relevant time period, Goldblatt was covered under a comprehensive general liability insurance policy issued by National Union. The policy included a personal injury liability clause, which stated as follows:

"1. COVERAGE P—PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publica-

tion or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Under the heading "Exclusions," the policy stated in part that "[t]his insurance does not apply *** (c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured."

National Union was notified of the Garcia action and refused to defend. J G, Goldblatt's successor in interest, retained counsel to defend the suit and initiated the instant declaratory judgment action against National Union. At the time the instant action was filed, Garcia's libel and slander count had already been dismissed.

As stated earlier, National Union counterclaimed for declaratory judgment and filed a motion for summary judgment. In its prayer for relief, National Union requested a declaration that it had no duty to defend or indemnify J G against the retaliatory discharge action and that defense costs should be limited to the libel and slander count on the grounds that "National Union had a duty to defend J.G. Industries, as to Count II only," until the time that count II was dismissed. The trial court ruled that the policy did not provide coverage for punitive damages but that National Union had a duty to defend the pending retaliatory discharge action. The court awarded J G $3,200 in already incurred defense costs.

On appeal, National Union contends that the trial court erred in finding that it had a duty to defend J G against the retaliatory discharge claim. National Union makes two specific arguments in support of this contention. First, it maintains that the insurance policy did not provide coverage for retaliatory discharge. Second, citing *Ru-*

*benstein Lumber Co. v. Aetna Life & Casualty Co.* (1984), 122 Ill. App. 3d 717, 462 N.E.2d 660, National Union argues that insurance for retaliatory discharge claims is void as against public policy.

In addressing the first argument, we note that the terms of the comprehensive general liability policy provide coverage for bodily injury and property damage. In his brief on appeal, defendant Garcia does not contend that the claim for retaliatory discharge falls within the definition of bodily injury or property damage. Rather, he contends that coverage is extended by the personal injury liability endorsement. This endorsement, quoted in full earlier in this opinion, provides that National Union would pay damages for injuries arising out of "one or more of the following offenses committed in the conduct of the named insured's business." The policy then specifically lists the covered offenses as false arrest, detention or imprisonment, or malicious prosecution; the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance violative of the right to privacy (with certain stated exceptions); and wrongful entry or eviction, or other invasion of the right of private occupancy. Retaliatory discharge is not listed as an offense covered by the personal injury liability endorsement.

Garcia concedes that retaliatory discharge does not appear among the offenses explicitly covered by the policy. He argues, however, that the retaliatory discharge claim "could" have fallen within the exclusion relating to personal injuries "sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured." Garcia argues that because this exclusion was deleted from the policy, the parties "probably" intended to provide coverage for employment-related offenses such as the retaliatory discharge claim. Garcia contends that even if this intent is not clear, at the very least the deletion of the exclusion created an ambiguity in the insurance contract which should be construed against the insurer.

■ The mere fact that an ambiguity exists somewhere within the confines of an insurance policy does not automatically mandate a judgment against the insurer. Where a policy contains allegedly ambiguous language, it is the duty of the court to construe the policy as a whole with the goal of best effectuating the intentions of the parties. (*National Surety Corp. v. Swissler Plumbing, Inc.* (1988), 167 Ill. App. 3d 608, 613-14, 521 N.E.2d 257.) We are mindful of the proposition of law stating that ambiguities in an insurance contract should be construed against the insurer and in favor of the insured. (*Simioni v. Continental Insurance Cos.* (1985), 135 Ill. App. 3d 916, 918, 482

N.E.2d 434.) However, we do not believe this proposition requires strained or unreasonable interpretations which would have the effect of invalidating the contract between the parties. As stated in *Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 666, 458 N.E.2d 644, 649, "[l]iberal construction of an insurance policy in favor of the insured must yield to rules of reasonable construction."

▰ In the case at bar, we do not believe the policy can be reasonably construed to provide coverage for retaliatory discharge. The policy contains a list of the offenses covered. Retaliatory discharge is not on the list. This is fairly strong evidence that the parties did not intend it to be covered. We cannot accept the strained argument that the parties intended to cover retaliatory discharge because it could have fallen within an exclusion which was subsequently deleted. Generally, an exception to an exclusion should not be interpreted as providing coverage or providing an additional basis for coverage. (See *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 834, 462 N.E.2d 1288.) We believe the same is true where, as here, an exclusion has been deleted from the policy. Furthermore, it appears unlikely that, given the explicit list of covered offenses, the parties also intended coverage for a vague category consisting of all offenses which could have conceivably fit within the boundaries of a deleted exclusion. In our view, the policy does not provide coverage for the retaliatory discharge claim.

▰ The defendant J G, in its brief on appeal, argues that National Union should be estopped from raising a policy coverage defense in the instant declaratory judgment action because it failed to defend the lawsuit under a reservation of rights or immediately seek a declaratory judgment as to its obligation to defend. J G relies upon the proposition that where the allegations of the complaint bring the claim potentially within the coverage of the policy, an insurer who fails to defend the action under a reservation of rights or to seek a declaratory judgment concerning its obligation to defend will be estopped from relying upon any policy defenses to coverage. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758.) Here, however, retaliatory discharge was not covered by the policy and Garcia's complaint alleging retaliatory discharge therefore did not come potentially within policy coverage. As we stated in *M/A Com, Inc. v. Perricone* (1989), 187 Ill. App. 3d 358, 362, 543 N.E.2d 228, 231, "[t]he duty to defend, although broad, is not boundless. The doctrine of estoppel arises only where a duty to defend exists and has been breached by the insurer. It does not pre-

vent the insurer from raising the issue of whether it did in fact breach a duty to defend its insured." We therefore reject J G's estoppel argument.

Our determination that retaliatory discharge was not covered by the policy makes it unnecessary for us to consider National Union's argument that insurance coverage for retaliatory discharge would violate public policy.

National Union next contends that, because no coverage was provided for the retaliatory discharge claim, the trial court erred in awarding defense costs covering that claim as well as the libel and slander claim. National Union conceded in its motion for summary judgment that it had a duty to defend the libel and slander claim. National Union argues that the cause should be remanded to allow apportionment of the costs so that it will bear only the costs related to the covered claim.

■ The Illinois Supreme Court in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, considered the insurer's duty to defend in a situation where the complaint charges both conduct for which the policy affords coverage and conduct for which it does not. It held that the "duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be." (*Peppers*, 64 Ill. 2d at 194, 355 N.E.2d at 28.) Since *Peppers* was decided, several cases have cited it for the proposition that an insurer has the duty to defend a multicount litigation even if only one or some of the counts are covered. See *Altaf v. Hanover Square Condominium Association No. 1* (1989), 188 Ill. App. 3d 533, 540-41, 544 N.E.2d 1032; *Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066; *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 861, 531 N.E.2d 913; *Fidelity & Casualty Co. v. Nalco Chemical Co.* (1987), 155 Ill. App. 3d 730, 740, 509 N.E.2d 446; *Tuell v. State Farm Fire & Casualty Co.* (1985), 132 Ill. App. 3d 449, 453-54, 477 N.E.2d 70.

National Union maintains that the above-cited cases have misinterpreted *Peppers* and that the proper interpretation of its pronouncement on the duty to defend is that the defense obligation which attached to the covered cause of action is not eliminated or diminished by the fact that the complaint also contains additional noncovered causes of action. According to National Union, the *Peppers* court did not intend to hold that the insurer is obligated to provide a defense

against causes of action or theories of recovery not insured under the policy.

National Union has not cited, and we have not found, any Illinois cases which have considered this issue as framed by National Union. However, it appears that the decisions from other jurisdictions which have squarely addressed the issue express little sympathy for National Union's position. For example, in *Timberline Equipment Co. v. St. Paul Fire & Marine Insurance Co.* (1978), 281 Or. 639, 644, 576 P.2d 1244, 1247, the insurer who failed to defend a complaint alleging both covered and noncovered claims argued that it was obligated to reimburse the insured for only those defense costs attributable to the covered portion of the complaint. The Oregon Supreme Court rejected this argument and held the insurer liable for the total defense costs. A similar argument for apportioning defense costs between covered and noncovered claims was rejected by the supreme court of Minnesota in *Jostens, Inc. v. CNA Insurance/Continental Casualty Co.* (Minn. 1987), 403 N.W.2d 625, where the court relied upon the "strong policy in favor of requiring defense where there is even arguable coverage." (*Jostens*, 403 N.W.2d at 631.) Finally, in a case which provides some, albeit weak, support for National Union's position, the California Supreme Court in *Hogan v. Midland National Insurance Co.* (1970), 3 Cal. 3d 553, 476 P.2d 825, 91 Cal. Rptr. 153, used language suggesting that the insurer may be entitled to an apportionment of attorney fees under certain circumstances. In discussing the issue, the court stated that "[i]n its pragmatic aspect, any precise allocation of expenses in this context [of covered and noncovered claims] would be extremely difficult and, if ever feasible, could be made only if the insurer produces undeniable evidence of the allocability of specific expenses." *Hogan*, 3 Cal. 3d at 564, 476 P.2d at 831, 91 Cal. Rptr. at 159; see also Annot., 41 A.L.R. 2d 434 (1955); 7C J. Appleman, Insurance Law & Practice §4691, at 249 (1979).

Regardless of our views on the merits of National Union's apportionment argument, we believe the supreme court opinion in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, requires us to reject it. This cause appears to be factually indistinguishable from *Peppers* and the language employed in *Peppers* stating that an insurer has a duty to defend "cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be." (*Peppers*, 64 Ill. 2d at 194, 355 N.E.2d at 28.) Given the apparent clarity of this language, we believe that adoption of an interpretation which would limit an insurer's defense costs to covered por-

tions of the complaint must be left to the supreme court. Thus, we will not disturb the trial court's award of defense costs.

Accordingly, the judgment of the circuit court is reversed in part and affirmed in part.

Reversed in part; affirmed in part.

LINN and JOHNSON, JJ., concur.