PERKINS AND WILL *et al.*, Plaintiffs and Counterdefendants-Appellees, v. SECURITY INSURANCE COMPANY OF HARTFORD, Defendant and Counterplaintiff-Appellant.

First District (4th Division)   No. 1—90—1044

Opinion filed September 19, 1991.

JIGANTI, P.J., dissenting.

Rooks, Pitts & Poust, of Chicago (John J. Blasi, of counsel), for appellant.

Sonnenschein, Nath & Rosenthal, of Chicago (C. Harker Rhodes, Jr., and Alan M. Posner, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs are several business entities, which we will refer to as Perkins & Will, an architectural and engineering firm. Defendant is the Security Insurance Company of Hartford, Inc. (Security). Perkins & Will bought a professional liability insurance policy from Security. The firm was named as a defendant in a lawsuit. Perkins & Will settled, and Security advanced a portion of the settlement.

Perkins & Will then brought this declaratory judgment action in the circuit court of Cook County against Security. The firm sought a declaration that Security was obliged to indemnify it. Security counterclaimed, seeking: (1) a declaration that the insurance policy did not cover the firm in the lawsuit, and (2) the recovery of its advance.

On cross-motions for summary judgment, the trial court granted summary judgment for Perkins & Will. Security appeals, contending the trial court erred in granting summary judgment for Perkins & Will.

We affirm the judgment of the trial court.

Background

A

The record contains the following pertinent facts. In July 1969, Perkins & Will and another architecture firm, Edward Durell Stone and Associates, formed a joint venture to design and provide architectural services for the Amoco Building in Chicago. The joint venture then entered into a contract with the Standard Oil Company, which was subsequently replaced by Amoco Properties, Inc.

In 1972, Perkins & Will bought a professional liability insurance policy from the CNA Insurance Companies (CNA). The managing underwriter for CNA was the Design Professionals Financial Corporation, now doing business as the Design Professionals Insurance Company (DPIC). The coverage extended from April 1972 through March 1987. The policy specifically covered the joint venture and the joint venturers for the Amoco Building project.

In June 1984, Perkins & Will notified CNA of a "potential claim" arising from the Amoco Building project. Marble panels covered the building. Apparently some of these panels bowed outwards

from the surface of the structure. The concern was that these panels could become loose and fall off the building. In August 1984, the firm notified DPIC of the potential claim.

In July 1987, Perkins & Will bought a professional liability insurance policy from Security. The firm paid a premium of $414,217. DPIC was also Security's managing underwriter. The coverage extended from July 2, 1987, to July 2, 1988.

Since the 1987-88 Security policy is the heart of this appeal, we must describe its pertinent parts in detail. On the face of its initial "Declarations" page, the policy designates Security as the insurer "(herein called the Company)." The policy states in pertinent part:

> "This policy is provided on a claims-made basis. It applies only to those claims that are first reported to the Company during the policy period. ***

**I. INSURING AGREEMENTS**

The Insurance Company designated on the Declarations Page and hereafter referred to as 'we,' 'us,' or 'our,' makes the following agreements with the Named Insured, hereafter called 'you,' 'your,' 'the Named Insured,' or 'the Insured':

**A. What We Insure**

We will pay those sums in excess of the deductible that you become legally obligated to pay as damages because of 'claims' to which this insurance applies arising from conduct of your professional practice. ***

\* \* \*

**D. Where and When We Insure**

This insurance applies:

\* \* \*

3. To 'claims made' during the policy period if:

a. The claim arises during the policy period; or

b. The error, omission, or negligent act giving rise to the claim took place prior to the policy period but after the retroactive date specified in the declarations, if applicable, provided that:

(1) you had no knowledge of the claim prior to the beginning of this policy; and

(2) you had no knowledge of any situation that resulted in the claim; and

(3) there is no other valid insurance for the claim.

\* \* \*

**III. DEFINITIONS USED IN THIS POLICY**

\* \* \*

C. 'claim' means:

1. a demand for money or services, or the filing of a suit \*\*\* naming any Insured and alleging an actual or alleged error, omission or negligent act arising out of the conduct of your professional practice; or

2. an actual event or alleged event which has resulted in damages and of which any Insured has knowledge; or

3. an actual event or alleged event which may cause damage and of which any Insured has knowledge.

D. 'claims made' means a claim that is reported to us during the policy period.

\* \* \*

## IV. CONDITIONS AFFECTING THIS INSURANCE

### A. Duties in the Event of Claim or Suit

1. You must see to it that we are notified promptly of any claim. Notice should include:

a. How, when and where the alleged error, omission or negligent act arising out of the conduct of your professional services took place; and

b. The names and addresses of any injured persons and witnesses.

2. If a claim is made or suit is brought against any Insured, you must provide us prompt written notice of the claim or suit.

3. You and any other involved Insured must:

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

\* \* \*

c. cooperate with us in the investigation, settlement or defense of the claim or suit; \*\*\*.

\* \* \*

### E. Other Insurance

If other valid or collectible insurance is available to any Insured for any claim we cover, our obligations are limited as follows:

1. Primary Insurance

This insurance is primary except when 2. below applies. \*\*\*

2. Excess Insurance

> This insurance is excess over any other insurance, \*\*\* but specific exclusions in the policy shall apply. When this insurance is excess, we will not defend any claim or suit that any other insurer has a duty to defend."

The policy was amended by endorsement 32, effective January 22, 1988. The endorsement, labelled "Limited Joint Venture Coverage," provides in pertinent part:

> "This policy will apply to all Joint Ventures entered into by you with other Architectural Engineering, Landscape Architectural, or Land Surveying firms arising from the conduct of your professional practice.
>
> If you become legally obligated to pay damages due to participation in a Joint Venture, this policy will apply solely to your errors, omissions or negligent acts, if the claims meets [*sic*] all other policy conditions."

On May 16, 1988, Amoco filed an amended complaint in the trial court, which added Perkins & Will as defendants. Other defendants included Edward Durell Stone and Associates, and the joint venture. Amoco subsequently filed a second amended complaint. Amoco alleged, *inter alia*, that Perkins & Will and the joint venture breached the contract with Amoco, committed negligence and malpractice, and also committed fraudulent and deceptive business practices.

Perkins & Will subsequently tendered its defense to CNA. The insurer accepted the defense and coverage, but reserved its rights and defenses.

In letters dated May 24 and June 17, 1988, Perkins & Will called upon DPIC, as managing underwriter for Security, to defend and indemnify the firm. On June 23, DPIC, on behalf of Security, denied coverage and declined to defend and indemnify the firm.

## B

On October 3, 1988, Perkins & Will filed its complaint in the case at bar against Security. Perkins & Will sought a declaration that Security was obliged to indemnify the firm for any liability in excess of CNA's coverage. Further, if CNA ever successfully disclaimed coverage, Security would be obliged to defend and indemnify the firm for all amounts in excess of the policy's deductible up to the policy limit. Security answered and counterclaimed. Security sought a declaration that the policy did not cover Perkins & Will if it became liable to Amoco.

On January 23, 1990, Perkins & Will and the other architect-defendants in the Amoco litigation settled with Amoco. Perkins & Will and Security both contributed toward the settlement. Further, Perkins & Will and Security agreed that Security would advance an additional $400,000 toward the settlement. However, pursuant to the agreement, Security reserved the right to recover its advance from Perkins & Will if Security prevailed in the declaratory judgment action.

Both sides amended their pleadings to conform to the settlement. Perkins & Will sought a declaration that Security was obliged to indemnify the firm for the $400,000 and that the firm was not obliged to return the advance. In its counterclaim, Security alleged that it was not obliged to pay the advance and sought its recovery.

Both sides moved for summary judgment. On March 15, 1990, the trial court granted summary judgment in favor of Perkins & Will, and declared that the 1987-88 Security policy covered Perkins & Will for the settlement advance. Security appeals.

OPINION

In reviewing a trial court's entry of summary judgment, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Summary judgment is an appropriate remedy where only the construction and legal effect of an insurance policy are at issue. *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601, 602.

■ In the case at bar, Security contends that the 1987-88 insurance policy did not cover Perkins & Will in the Amoco litigation. Insurance policies are contracts. The general rules of construction that apply to other contracts also apply to insurance policies. Where the language of the policy is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense, and the intent of the parties must be determined solely from the language used. Whether the policy contains an ambiguity is a question of law for the court to determine. Accordingly, we must examine the entire policy and interpret its pertinent parts in light of the whole document, to determine whether any ambiguity or uncertainty exists in the language at issue. *Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill.

App. 3d 410, 412, 407 N.E.2d 77, 79; *Dawe's Laboratories v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1039, 1048, 313 N.E.2d 218, 224.

In its counterclaim, Security pointed to several sections in the policy to support its contention. On appeal, however, Security focuses its argument on policy section I(D)(3). As we quoted earlier, section I(D)(3) provides that the insurance covers "claims made" during the policy period. Security argues that subsections 3a and 3b essentially form a single qualifying clause containing the requirements of subsections 3b(1) through (3). Security argues that Perkins & Will did not meet subsections b(1) and b(2) because the firm had knowledge of the bowing marble, which resulted in the claim, and that the firm had this knowledge prior to the beginning of the policy.

■ Security conceded in its appellate briefs and during oral argument that its interpretation of policy section I(D)(3) can be reached only by replacing the word "or," which follows subsection 3a, with the word "and." Under certain circumstances, a court can construe the word "or" in an insurance contract so as to read "and," and *vice versa*. The word "or" will not be given its literal meaning when such meaning would do violence to the evident intent and purpose of the contracting parties, and the nonliteral meaning would give effect to such intent. (2 G. Couch, Cyclopedia of Ins. L. 2d §15.23, at 204 (rev. 1984); 13 J. Appleman, Ins. L. & Prac. §7387, at 183 (rev. 1976).) This general principle is found in Illinois law. 12A Ill. L. & Prac. *Contracts* §238, at 57 (1983).

However, it is quite clear in Illinois that, ordinarily, the words "and" and "or" are not interchangeable terms. On the contrary, those words are used in the structure of the English language for entirely different purposes; "and" is strictly of a conjunctive nature and "or" is strictly of a disjunctive nature. Thus, Illinois courts do not treat the words "and" and "or" as interchangeable when their accurate and literal meaning does not render the meaning of the policy dubious. (*Chicago Land Clearance Comm'n v. Jones* (1957), 13 Ill. App. 2d 554, 559, 142 N.E.2d 800, 803, cited in *Manor Healthcare Corp. v. Soiltest, Inc.* (1989), 192 Ill. App. 3d 934, 941-42, 549 N.E.2d 719, 725; accord 12A Ill. L. & Prac. *Contracts* §239, at 57 (1983); 13 J. Appleman, Ins. L. & Prac. §7387, at 183 (rev. 1976).) The substitution of these words "is never resorted to except for strong reasons, and the words should never be so construed unless the context favors the substitution." *Chicago Land Clearance Comm'n*, 13 Ill. App. 2d at 559, 142 N.E.2d at 803.

■ Applying these principles to the case at bar, we conclude that the trial court correctly interpreted the Security policy. The trial court construed subsections 3a and 3b as forming two sets of alternative conditions separated by the disjunctive "or." The disjunctive "or" signifies an alternative; when the word separates parts of a sentence, the various parts are to be taken separately. (*Lakatos v. Prudence Mutual Casualty Co.* (1969), 113 Ill. App. 2d 310, 317, 252 N.E.2d 123, 126; *Kosick v. Hospital Service Corp.* (1956), 12 Ill. App. 2d 291, 296-97, 139 N.E.2d 619, 621-22.) Since policy section III(C)(1) defined "claim" as "the filing of a suit," and since it was undisputed that the "claim," *i.e.*, the Amoco lawsuit that named Perkins & Will as a defendant, arose during the policy period, the policy, therefore, covered Perkins & Will.

Security argues that the policy, when read as a whole, does not support the trial court's interpretation of policy section I(D)(3). We disagree. First, we note that Security wrote the policy. Throughout the document, Security uses the terms "or" and "and." The insurer knew which term to use and when to use it. Thus, Security's use of the disjunctive "or" in section I(D)(3) must be taken for what the word commonly means—"or."

Second, section I(D)(3) essentially distinguishes between several of the policy's definitions of the term "claim." As we previously mentioned, policy section III(C)(1) defines "claim" as, *inter alia*, "the filing of a suit." We note the use of the disjunctive "or" to indicate alternative definitions. Indeed, policy section IV specifically distinguishes an insured being named in a lawsuit, from an insured having knowledge of an event which has resulted in, or may cause, damage, as described in section III(C). We hold that the Security policy, when read as a whole, supports the trial court's construction of policy section I(D)(3).

Security also contends that the trial court's interpretation of the policy is "unreasonable and inequitable." Security argues that no insurer would cover an insured, who had knowledge of a claim when he sought coverage, simply by virtue of the insured being named in a lawsuit. However, the following maxim answers this argument:

> "The courts cannot make a contract for the parties; nor can they change or modify the terms of the contract deliberately entered into by the parties even though by so doing they might improve it. A contract cannot be construed for the purpose of supplying an intention not otherwise shown." *Chicago*

*Land Clearance Comm'n,* 13 Ill. App. 2d at 560, 142 N.E.2d at 803.

Security received $414,217 from Perkins & Will for insurance coverage. Subsequently, Security paid $400,000 pursuant to the policy that it wrote. Security would now have this court rewrite policy section I(D)(3). This we may not do. As noted above, the pertinent facts are undisputed. Based on these facts, we hold that Perkins & Will is entitled to a judgment as a matter of law. Accordingly, we uphold the trial court's grant of summary judgment for Perkins & Will.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The majority correctly states the applicable law. Insurance policies are contracts. The general rules of construction that apply to other contracts also apply to insurance policies. In apparent deference to the proposition that a policy should be construed as a whole with the goal of best effectuating the intentions of the parties (see *J G Industries, Inc. v. National Union Fire Insurance Co.* (1991), 218 Ill. App. 3d 1061), the majority acknowledges that "[t]he word 'or' will not be given its literal meaning when such meaning would do violence to the evident intent and purpose of the contracting parties, and the nonliteral meaning would give effect to such intent." (219 Ill. App. 3d at 813.) The majority then proceeds to engage in a tedious grammatical exercise which leads to a result not only clearly unintended by the parties, but also flagrantly at odds with basic principles of insurance law.

The policy in the case at bar is a "claims made" policy. As we stated in *Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 899, 409 N.E.2d 387, 390, "[i]t is well established that the 'claims made' or 'discovery' policy is characterized by coverage for negligent acts or omissions only if such are *discovered during* and brought to the attention of the insurer within the policy term." (Emphasis added.) The policy here provides that:

"This insurance applies:

* * *

3. To 'claims made' during the policy period if:

a. The claim arises during the policy period; or

b. The error, omission, or negligent act giving rise to the claim took place prior to the policy period but after the retroactive date specified in the declarations, if applicable, provided that:

(1) you had no knowledge of the claim prior to the beginning of this policy; and

(2) you had no knowledge of any situation that resulted in the claim; and

(3) there is no other valid insurance for the claim."

Although inartfully drawn, a reasonable construction of this language would be that the policy covers negligence actually committed during the policy period as well as negligent acts which were committed prior to the policy period but remained undiscovered by the insured until the time covered by the policy. The majority instead seizes upon the fact that another section of the policy includes the "filing of a suit" as one of its alternate definitions of the term "claim." It then concludes that because the instant lawsuit "arose" during the policy period, coverage was provided under section 3(a) of the policy despite the fact that the insured knew of the alleged negligence giving rise to the suit long before the effective date of the policy.

The majority's interpretation leads to absurd results. Under its interpretation, an insured could be notified of an event resulting in damages and then obtain an insurance policy with the knowledge that a lawsuit was forthcoming. In my opinion, this result undercuts the fundamental nature of an insurance contract and renders the policy in question an absolute performance bond. It defies logic to hold, as does the majority, that Security bargained for the opportunity to expose itself to liability in excess of $50 million in exchange for a $400,000 premium. As noted by Security in its brief, an insurance company is not in the business of insuring events which have already occurred and which are known to the insured.

For the foregoing reasons, I respectfully dissent from the majority opinion.