64 F.3d 1001
 32 Fed.R.Serv.3d 619
 SECURITY INSURANCE COMPANY OF HARTFORD,
Plaintiff-Appellant/Cross-Appellee,
v.
KEVIN TUCKER & ASSOCIATES, INC.; Tucker-Hinson Associates,
Inc.; The Kevin Tucker Group, Inc.; Kevin Tucker,
Individually; J.T. Buckner, Individually; Alan Wyatt,
Individually, Defendants-Appellees (93-6366),
City of Bowling Green, Kentucky, Defendant-Appellee/Cross-Appellant.
 Nos. 93-6366, 93-6462.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 9, 1995.
Decided Sept. 7, 1995.
 
 1
 Robert M. Brooks (argued and briefed), Boehl, Stopher & Graves, Louisville, KY, John J. Blasi, Rooks, Pitts & Poust, Chicago, IL, for plaintiff-appellant/cross-appellee.
 
 
 2
 Dixie R. Satterfield (briefed), H. Eugene Harmon (argued and briefed), Satterfield & Kafoglis, Bowling Green, KY, for defendants-appellees.
 
 
 3
 Before: MARTIN and SILER, Circuit Judges; JOINER, District Judge.*
 
 
 4
 JOINER, District Judge.
 
 
 5
 The city of Bowling Green contracted with Kevin Tucker & Associates, Inc., (KT & A, Inc.) for site analysis, design and construction supervision of the city's Hartland Municipal Golf Course. Dissatisfied with the professional services rendered, Bowling Green filed suit in state court against KT & A, Inc. and the other named defendants in this case, all individuals or entities affiliated with firms formed by Kevin Tucker. Plaintiff Security Insurance Company of Hartford (Security) filed this declaratory judgment action, alleging that the professional liability policy it had issued to Kevin Tucker & Associates, a sole proprietorship, and The Kevin Tucker Group, Inc. did not insure the other named defendants and did not cover claims based on errors and omissions which occurred prior to the effective date of the policy. Security also alleged that its duty to defend was limited accordingly.
 
 
 6
 Both Security and Bowling Green appeal the district court's declaratory judgment. Their competing claims call into question which of the defendants are insureds under the policy, and whether the policy applies to claims based on errors and omissions which predated the effective date of the policy. We conclude that the district court correctly construed the provisions of the policy, but that it erred in denying Security's motion to amend its complaint to add claims for reformation and misrepresentation. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 A.
 
 7
 History of Kevin Tucker's Business Entities/Contract With Bowling Green
 
 
 8
 Kevin Tucker, an engineer and landscape architect, formed KT & A, Inc. in 1975. KT & A, Inc. entered into the contracts with Bowling Green regarding the golf course in early 1988. KT & A, Inc. employees Alan Wyatt and J.T. Buckner served as project manager and civil engineer, respectively, on the golf course project. In May 1988, Don Hinson purchased 50 percent of the stock of KT & A, Inc. and the corporation changed its name to Tucker-Hinson Associates, Inc. (T-H). Bowling Green was informed of the name change, and the corporation's work on the project continued.
 
 
 9
 In March 1989, the construction contractor discovered a "graphics problem," i.e., alleged errors in T-H's plans' description of the property boundaries and topography. T-H proposed remedial measures, but apparently could not correct the problem to Bowling Green's satisfaction. The graphics problem forms the basis of Bowling Green's claims in state court against Tucker and his various entities and employees.
 
 
 10
 Tucker later decided to resign from T-H, and incorporated a new firm, The Kevin Tucker Group, Inc. (KT Group) in February 1990. Buckner, but not Wyatt, became an employee of the KT Group. Tucker and Hinson jointly communicated their plan to dissolve T-H to Bowling Green. Tucker individually wrote to the city manager, announcing the formation of the KT Group, which, according to Tucker, would continue work on the Hartland project. One month later, Tucker and Hinson informed the city manager that T-H had ceased all consulting operations, would not perform the services under its contract with the city, and agreed to an assignment of the project to the KT Group. No formal assignment was executed, and Tucker testified that the KT Group performed only final inspections necessary to close out the project and that these inspections were not performed under T-H's contract.
 
 
 11
 Bowling Green removed the KT Group from the Hartland project in the summer of 1990, claiming numerous errors and omissions. The city filed suit in August 1990 against the defendants in this action and other entities unrelated to this insurance dispute.
 
 Security Policy
 
 12
 KT & A, Inc./T-H was insured by CNA between 1985 and 1989.[1] In November 1989, in anticipation of resigning from T-H, Tucker completed an application for liability insurance with a Security agent, listing his company name as Kevin Tucker & Associates. Tucker testified that he was operating as a sole proprietorship, and simply needed a firm name in order to apply for insurance. Nonetheless, Tucker's application discloses a five-year business and financial history of KT & A, Inc./T-H. Tucker's application further stated that none of the firm's key personnel or project managers had knowledge of any incident or condition that could potentially give rise to a claim against the firm.
 
 
 13
 Security issued a professional liability policy with an effective date of December 8, 1989, to Kevin Tucker & Associates, designated to be an individual, not a corporation. The basic insuring agreement obligates Security to "pay those sums in excess of the deductible that you [the insured] become legally obligated to pay as damages because of 'claims' to which this insurance applies arising from conduct of your professional practice." The standard form policy states that it "applies":
 
 
 14
 3. To "claims made" during the policy period if:
 
 
 15
 a. The claim arises during the policy period, or
 
 
 16
 b. The error, omission, or negligent act giving rise to the claim took place prior to the policy period but after the retroactive date specified in the declarations, if applicable, provided that [the insured had no knowledge of the claim or the events giving rise to the claim, and had no other coverage].
 
 
 17
 Subparagraph b was deleted by endorsement 10, and substituted with the following:
 
 
 18
 3.b. The error, omission or negligent act giving rise to the "claim" took place after 12/08/89. Except for: Golf Club of Tennessee, Nashville, Tennessee.
 
 
 19
 The policy defines the term "claim" broadly to include the filing of a suit against an insured which alleges an error or omission arising out of the insured's professional practice. "Claims made" is defined as a "claim that is reported to us [Security] during the policy period."
 
 
 20
 The policy further states that it does not apply to any partnership, joint venture or corporation of which the insured is or was a partner, member or participant, unless such entity is designated in the declarations as a named insured. The policy defines who is an insured as well, stating that if the insured is an individual, he is insured only with respect to the conduct of a professional practice of which he is the sole owner. The insured's employees are also "insureds," but only for acts within the scope of their employment by the insured.
 
 
 21
 Tucker testified that, except with respect to the unrelated project noted in endorsement 10, he negotiated with Security's broker for prospective coverage only, and did not intend to purchase coverage for any work performed by KT & A, Inc./T-H. Tucker testified that he understood that endorsement 10, together with the rest of the policy, precluded retroactive coverage. Security's agent testified by affidavit that he discussed the option of purchasing retroactive coverage with Tucker, and that Tucker's premium was discounted to reflect the fact that such coverage was not purchased.
 
 
 22
 Kevin Tucker & Associates, the sole proprietorship, never actually performed professional services. With the formation of the KT Group in February 1990, Security's policy was amended to add the KT Group as a named insured, and to reflect its corporate status. Kevin Tucker & Associates was retained as a named insured.
 
 B.
 
 23
 Security filed this declaratory judgment action in June 1991 against the city of Bowling Green and the state court defendants previously affiliated with Kevin Tucker. The district court held that the city's state court lawsuit, filed in August 1990, constituted a "claim" which "arose" during the policy period, and that the claims asserted in that suit thus fell within the policy's coverage, regardless of the fact that they were based in large part on errors and omissions which predated the policy's effective date. The court rejected, however, Bowling Green's contention that KT & A, Inc./T-H and Alan Wyatt were insureds under the policy. The court entered a declaratory judgment identifying Kevin Tucker & Associates, a sole proprietorship, and the KT Group as insureds under the policy, and providing that Buckner was an insured under the policy only to the extent that he performed acts within the scope of his employment with the KT Group.
 
 II.
 A.
 
 24
 The district court entered its declaratory judgment in response to Bowling Green's motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim on which relief can be granted. Treating the motion as one for partial judgment on the pleadings under Rule 12(c), the court held that the policy covered the claims asserted in the state court suit. The court referred to matters outside the pleadings to determine which persons and entities were insured under the policy, and, under Rule 12(b)(6), the court's determination is regarded as the grant of partial summary judgment under Fed.R.Civ.P. 56. This court reviews de novo both the grant of judgment on the pleadings under Rule 12(c), and the grant of summary judgment under Rule 56. Miller v. Currie, 50 F.3d 373, 377 (6th Cir.1995); Anderson Dev. Co. v. Travelers Indem. Co., 49 F.3d 1128, 1131 (6th Cir.1995); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir.1987).
 
 
 25
 A preliminary issue concerns which state's law applies to this diversity action. The district court, although relying to an extent on Kentucky law, did not decide this issue. Bowling Green contends that Tennessee law applies, an argument not challenged by Security. In a diversity action, the district court is obligated to apply the choice of law rules of the state in which it sits. Anderson, 49 F.3d at 1131 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Under Kentucky law, the law applicable to a contract dispute is that of the state with the most significant relationship to the transaction and the parties. Breeding v. Massachusetts Indem. and Life Ins. Co., 633 S.W.2d 717, 719 (Ky.1982). The policy in question was issued to Tennessee citizens, was negotiated by a Tennessee citizen with an insurance agent located in Tennessee, and was issued by an insurer authorized to do business in Tennessee. No argument, factual or legal, is made that Kentucky law applies, and the party most likely to make such an assertion, the city of Bowling Green, expressly relies on Tennessee law. We therefore look to Tennessee law to resolve this contract dispute.
 
 
 26
 Additionally, we must determine the proper scope of this action. Security claims the district court erred in refusing to address whether the KT Group and Kevin Tucker & Associates, a sole proprietorship, were successors of KT & A, Inc./T-H. That question, however, requires a determination of whether the later entities can be found liable to Bowling Green for the acts and omissions of the earlier entities. The risk of successor liability is doubtless what leaves Security dissatisfied with the district court's determination of the claims covered by its policy. This declaratory judgment action, however, involves only the scope of coverage afforded by Security's policy, not the putative insureds' liability to Bowling Green, or the scope of their liability. Those questions must be determined in the state court action.
 
 B.
 
 27
 With respect to the merits, we address first the proper construction of the insurance policy, resolving Security's contention that it does not apply to claims based on errors and omissions which occurred prior to the policy's effective date, and Bowling Green's contention that KT & A, Inc./T-H is an insured under the policy. Tennessee follows familiar rules regarding the construction of insurance contracts. The policy's language must be given its plain and ordinary meaning. "That is, it must be read as a layman, not as a Philadelphia lawyer, would read it." Paul v. Insurance Co. of N. Am., 675 S.W.2d 481, 484 (Tenn.App.1984). "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust." Hill v. Tennessee Rural Health Improvement Ass'n, 882 S.W.2d 801, 802 (Tenn.App.1994). Ambiguities in the policy are to be resolved in favor of the insured. Omaha Property & Casualty Ins. Co. v. Johnson, 866 S.W.2d 539, 541 (Tenn.App.1993). There must be two reasonable constructions of the policy language, however, before a court is permitted to find the policy ambiguous. The rule requiring that a policy be construed against the insurer does not authorize the creation of an ambiguity where none exists. Paul, 675 S.W.2d at 484 (citing Winecoff v. Nationwide Mut. Ins. Co., 223 Tenn. 267, 444 S.W.2d 84, 87 (1969)).
 
 Claims Covered by the Policy
 
 28
 As amended by endorsement 10, p I.D.3 of the policy states that it applies to claims made (i.e., reported to Security) during the policy period if (a) the claim "arises" during the policy period or (b) the error or omission on which the claim is based took place after December 8, 1989, the policy's effective date. The district court held, and Security does not dispute, that a claim "arises" within the meaning of subparagraph (a) when a lawsuit is filed. This reading of subparagraph (a), together with the use of the disjunctive "or," means that any lawsuit filed and reported to Security within the policy period is covered under the policy, regardless of whether subparagraph (b) exists in its original or modified form. In order to effectuate the intent of both contracting parties that the policy not provide retroactive coverage, Security argues that the policy's use of the word "or" in p I.D.3 must be read to mean "and." If thus construed, the policy would impose an additional coverage requirement, i.e., that the acts giving rise to the claim also take place during the policy period.
 
 
 29
 Security's contention that the plain meaning of "or" should be disregarded and supplanted with the word "and" was made--and soundly rejected--in Perkins & Will v. Security Insurance Company, 219 Ill.App.3d 807, 162 Ill.Dec. 308, 579 N.E.2d 1122 (1991). The policy in that case was identical to the policy at issue here, except that subparagraph (b) had not been amended by endorsement. As unmodified, p I.D.3 applied to claims(a) which arose during the policy period or (b) before the policy period but after a stated "retroactive date," provided that the insured did not have prior knowledge of the claim or facts giving rise to the claim prior to the policy's effective date. The insured in Perkins was sued within the policy period, and it was undisputed that the claim thus "arose" during the policy period, satisfying subparagraph (a). The insured had been aware of the facts giving rise to the suit before obtaining insurance from Security, however, and Security sought to deny coverage on this basis. Security thus attempted, unsuccessfully, to persuade the court the "or" in p I.D.3 should be read as "and."
 
 
 30
 [O]rdinarily, the words "and" and "or" are not interchangeable terms. On the contrary, those words are used in the structure of the English language for entirely different purposes; "and" is strictly of a conjunctive nature and "or" is strictly of a disjunctive nature. Thus, Illinois courts do not treat the words "and" and "or" as interchangeable when their accurate and literal meaning does not render the meaning of the policy dubious. The substitution of these words "is never resorted to except for strong reasons, and the words should never be so construed unless the context favors the substitution."
 
 
 31
 ....
 
 
 32
 ... Security wrote the policy. Throughout the document, Security uses the terms "or" and "and." The insurer knew which term to use and when to use it. Thus, Security's use of the disjunctive "or" in section I(D)(3) must be taken for what the word commonly means--"or."
 
 
 33
 Id., 162 Ill.Dec. at 312, 579 N.E.2d at 1126 (citations omitted).
 
 
 34
 This court followed a similar approach in State Mutual Life Assurance Company v. Heine, 141 F.2d 741 (6th Cir.1944), where it construed a disability insurance contract under Kentucky law, rejecting the insurer's argument that "or" should be read as "and." "These words are not ordinarily convertible and a court is never justified in substituting one for the other, unless it is clear from the context that one has been mistakenly used for the other." Id. at 746.
 
 
 35
 In arguing that the plain meaning of the policy language should be disregarded, Security relies principally[2] on decisions from Tennessee and elsewhere in which courts have been required to determine whether a statute 's use of "or" should be interpreted as "and." Statutes enjoy rules of judicial construction that do not apply to insurance contracts, however. If a statute is found to be ambiguous, the ambiguity is resolved in favor of upholding the statute and giving effect to legislative intent. See, for example, Canale v. Steveson, 224 Tenn. 578, 458 S.W.2d 797 (1970), where the court observed that the "inaccurate use of 'and' and 'or' tends to infect statutory enactments," and followed the maxim that when a statute is capable of two constructions, one of which will render the statute valid and the other of which will void it, the court should employ the construction which will preserve the statute's validity. Id. 458 S.W.2d at 800. In contrast, if an insurance contract is found to be ambiguous, the ambiguity is to be resolved against the insurer and in favor of the insured. Thus, in Heine, this court refused to read a policy's use of "or" to mean "and" based on the prevailing rule that if policy language "is susceptible to two constructions, one of which will enforce payment of the benefits and the other excuse the company, the former should always be adopted." Heine, 141 F.2d at 746. Thus, if we were to conclude that the policy is ambiguous, Security would gain no ground thereby, because we would be constrained to construe that ambiguity against it.
 
 
 36
 We do not find the policy to be ambiguous, however. Tennessee, like Kentucky and Illinois, follows the rule of construction which requires that policy language be given its plain, ordinary meaning. Doing so in this case requires the conclusion that the "or" in p I.D.3 be read in the disjunctive. The policy, properly construed, applies to Bowling Green's state court lawsuit because it constitutes a claim which arose during the policy period, thus satisfying p I.D.3.a. We thus affirm the district court on this issue.
 
 Entities Covered by the Policy
 
 37
 Tucker incorporated the KT Group in February 1990, and notified Security. The policy previously issued to Kevin Tucker & Associates, a sole proprietorship, was amended by endorsement to add the KT Group as a named insured and to reflect its corporate status. Kevin Tucker & Associates was retained as a named insured. Bowling Green contends that the policy's amended designation of the named insured to be a corporation reflected an intent to insure the earlier Tucker entity, KT & A, Inc./T-H. We agree with the district court's disposition of this argument:[3]
 
 
 38
 However, just as Plaintiff cannot convince this Court that "or" means "and," Defendants cannot convince this Court that the designation "Inc." should be judicially affixed after the name "Kevin Tucker & Associates" where it does not otherwise appear. Where the parties have been heretofore careful to apply the correct corporate designations where appropriate, there is no reason for this Court to assume that the designation is now mistakenly omitted. Instead, the Policy contemplates that the sole proprietorship may have incurred liabilities prior to its incorporation that remain within the coverage of the Policy with equal force despite its present corporate status.
 
 
 39
 In this court, Bowling Green argues that it was never informed of KT & A, Inc./T-H's dissolution, that the KT Group completed the project with the same employees who had worked for KT & A, Inc./T-H, and that the city considered the KT Group and KT & A, Inc./T-H to be the same entity. These arguments may be pertinent to the question of successor liability in the state court suit, but they have no relevance in determining which entities are insured under Security's policy.
 
 
 40
 Bowling Green does not present a persuasive basis on which to disturb the district court's construction of the policy. Accordingly, we affirm on this issue as well.
 
 C.
 
 41
 Security contends that the court erred in denying its motions to amend its complaint to add a claim for reformation and a claim based on Tucker's alleged misrepresentation in completing the application for insurance. A plaintiff may amend his complaint after a responsive pleading has been filed only by leave of court or written consent of the adverse party, and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion. Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983).
 
 Reformation
 
 42
 Security sought leave to add a claim for the reformation of the policy, claiming that such relief is available to contracting parties when their written agreement does not conform to their mutual intent. See Cincinnati Ins. Co. v. Post, 747 S.W.2d 777, 781 (Tenn.1988) (contract of insurance may be reformed upon clear and cogent evidence of a mistake in drafting of policy which renders terms of policy different from those agreed upon by parties). Tucker and Security did not intend for the policy to provide retroactive coverage, and Security argued that the policy should be reformed to effectuate this intent. While the city opposed Security's motion, it neither contended that it would be prejudiced by allowance of the amendment, nor attempted to demonstrate that the reformation claim would be futile for lack of legal merit. The district court disallowed amendment, inferring that Security sought leave to amend because of a concern that Kevin Tucker might be found individually liable for the errors and omissions of KT & A, Inc./T-H, and stating that that concern was remedied by its holding that Tucker was covered under the policy only as the proprietor of Kevin Tucker & Associates, a sole proprietorship, and as principal of the KT Group. The court thus denied Security's motion as moot.
 
 
 43
 Security's motion was not moot. Security legitimately sought to add a claim for reformation based upon the fact that the city seeks recovery from the named insureds for the alleged errors and omissions of KT & A, Inc./T-H which predated the effective date of the policy. Whether the named insureds are liable for those errors and omissions is a question that must be resolved in the state court action. Whether the named insureds are covered for those errors and omissions must be decided in this case. We thus conclude that the court erred in denying Security's motion.
 
 Misrepresentation
 
 44
 Security also sought to amend its complaint to add a count for rescission of its policy, based upon Tucker's denial in the application for insurance that any key employees had knowledge of facts that could potentially give rise to a claim against the firm. Security's proposed amended complaint alleged that this denial constituted a material misrepresentation, entitling it to rescind the policy with respect to the Hartland Golf Course. Security's motion to amend was filed shortly after the district court's initial order granting partial judgment on the pleadings to Bowling Green as to the claims covered by the policy. The district court denied the motion, stating that Security had known of the potential misrepresentation claim since it initiated the action in July 1991, but did not move to add the claim until November 1992. Without explanation, the court stated that "granting leave to amend would unfairly prejudice Defendants."
 
 
 45
 Bowling Green defends the district court's decision based solely on Security's delay in filing its motion. Delay alone, however, does not justify the denial of leave to amend. Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail. "Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading[.]" Moore v. City of Paducah, 790 F.2d 557, 561 (6th Cir.1986) (quoting Tefft v. Seward, 689 F.2d 637, 639 n.2 (6th Cir.1982)). In focusing on Security's 16-month delay in filing its motion to amend, the court overlooked the fact that the action had been dormant for 13 of those months because Kevin Tucker's individual bankruptcy was pending during this time. Despite the grant of partial judgment on the pleadings to Bowling Green, the remainder of the case was at its earliest stage of pretrial activity. The discovery cut-off and trial dates had not been set. It is evident that Security's delay in bringing its motion to amend did not affect or prejudice Bowling Green's ability to contest the claim.
 
 
 46
 Perhaps in recognition of this fact, Bowling Green suggested to the district court that if Security's misrepresentation claim had been part of the initial complaint, the city might not have settled its claims in the state court action against the construction contractor and Tucker might not have obtained a discharge in his individual bankruptcy. Bowling Green's speculation about what might or might not have occurred in these independent proceedings falls far short of the "significant showing of prejudice" necessary to defeat a motion to amend. Bowling Green provided the district court with no basis to deny Security's motion to amend, and the court abused its discretion in so doing.
 
 
 47
 We REVERSE the denial of Security's motions to amend to add claims for reformation and misrepresentation, and REMAND with directions to allow both amendments; in so doing, we intimate no view on the ultimate disposition of either claim. We AFFIRM in all other respects.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 CNA denied responsibility when notified of Bowling Green's lawsuit
 
 
 [2]
 Security also relies on Overstreet v. Beasley, No. 85-253-II, 1986 WL 1036 (Tenn.App. Jan. 24, 1986), construing a contract which obligated the seller of a house to certify that there was no active termite infestation or damage. The court properly held that the seller did not discharge his obligation solely by certifying that there was no evidence of active infestation, and that the seller was responsible for the termite damage later discovered by the purchaser
 
 
 [3]
 We also are unpersuaded that Tucker's inclusion in the insurance application of KT & A, Inc./T-H's work, claim and insurance history reflected an intent to procure retroactive coverage, or somehow created an ambiguity in the policy itself. That history was relevant to Security's assessment of the risks associated with issuance of a policy to a new Tucker firm