ARTHUR SHERIDAN, Plaintiff-Appellant, *v.* JAMES W. ROUSE AND COMPANY, INC., Defendant.—(State Farm Life Insurance Company, Defendant-Appellee.)

First District (3rd Division)   No. 80—1895

Opinion filed October 13, 1982.

Main & Thomas, of Chicago (Robert C. Thomas, of counsel), for appellant.

Mark P. Cohen, of Chicago (Chapman and Cutler, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dated January 14, 1980, which granted summary judgment in favor of the defendant, State Farm Life Insurance Company (State Farm).

In 1976 the plaintiff, Arthur Sheridan, was engaged in the development and construction of a commercial shopping center in Bol-

lingbrook, Illinois, known as Briar Square. Defendant, James W. Rouse and Company, Inc. (Rouse), was engaged in the business of obtaining loan commitments for potential borrowers. By letter dated March 4, 1976, Rouse offered to give the plaintiff a permanent first mortgage on the Briar Square property, subject to various terms and conditions. This offer was specifically conditioned on the commitment of defendant State Farm to purchase the mortgage loan from Rouse. The plaintiff accepted this offer on March 12, 1976.

The pertinent terms and conditions of State Farm's commitment to Rouse are as follows:

Paragraph 1 required Rouse to pay a $40,000 commitment fee which would be "returned upon the purchase of this loan and fulfillment of all commitment conditions."

Paragraph 6 provided that State Farm be furnished with a certificate of completion from the architect.

Paragraph 12 required that State Farm be furnished with:

"Our form of Assignment of Lessor's Interest in lease which shall include:

a. Assignment of the following leases with provisions acceptable to us, with minimum net annual rentals and lease terms remaining at the start of loan amortization as indicated:

| Lucky Stores, Inc. | $87,130 | 25 years | 27,394 sq. ft. |
| KFC Management Company | $11,340 (average) | 10 years | 1,800 sq. ft. |
| KFC Management Company | $15,120 (average) | 10 years | 2,400 sq. ft. |
| Holiday Management Company | $33,000 | 10 years | 6,000 sq. ft. |
| Daley-Schroth Realty | $10,650 | 3 years | 1,500 sq. ft." |

Paragraph 18 required that State Farm be furnished with leases:

"*** in addition to those specified in condition #12 and executed by tenants approved by us, for at least 15,060 square feet of net rentable area within the security building at net annual rentals averaging no less than $6.00 per square foot."

Paragraph 19 provided that if all the commitment conditions ex-

cept the leasing requirements of paragraph 18 were satisfied, State Farm would purchase a mortgage loan from Rouse in the amount of $1,700,000. If the leasing requirements of paragraph 18 were satisfied by September 1, 1977, State Farm would purchase an additional mortgage loan of $300,000. The commitment expired on March 5, 1977.

The above provisions, together with the other terms and conditions of State Farm's commitment to Rouse, were incorporated in Rouse's commitment to the plaintiff.

By letter dated March 26, 1976, State Farm agreed to certain amendments of the commitment. State Farm and Rouse agreed to amend paragraph 12 "by inserting the phrase 'or other leases acceptable to State Farm, which acceptance shall not be unreasonably withheld' after the word 'leases' in the first line of said paragraph ***." By letter dated April 1, 1976, Rouse and the plaintiff agreed to the same amendments to their agreement dated March 12, 1976.

The parties agreed to various extensions of the expiration date of the commitment. On August 29, 1977, State Farm agreed to extend the purchase date on the loan to January 31, 1978. Rouse forwarded to State Farm a nonrefundable fee in the amount of $10,000 from the plaintiff for the granting of this extension.

On or about January 31, 1978, State Farm decided not to purchase the plaintiff's loan. Thereafter, the plaintiff filed his complaint in which he alleged that State Farm and Rouse wrongfully refused to fund the loan commitment. The plaintiff sought a return of the fees he paid in connection with the mortgage commitment and other damages. In its answer State Farm asserted as an affirmative defense that the plaintiff failed to satisfy the terms of the commitment, the performance of which was a condition precedent to any duty of State Farm to purchase the mortgage loan.

On May 14, 1979, State Farm filed a motion for summary judgment in which it asserted that the plaintiff failed to meet the rental requirements set forth in paragraphs 12 and 18. These requirements were necessary for State Farm to be assured of sufficient rental income to meet debt service requirements on the loan. State Farm further asserted that the plaintiff failed to complete the project by the time of the closing, as required by paragraph 6.

Accompanying the motion was the affidavit of Thomas Gardner, the State Farm investment analyst in charge of the commitment with Rouse. In his affidavit Gardner pointed out that pursuant to paragraphs 12 and 18, the plaintiff was required to assign to State Farm prior to closing certain major tenant leases, or other acceptable

leases, with terms and net annual rentals as follows:

| Lessee | Annual Rent | Term | Lease Space |
|---|---|---|---|
| Lucky Stores, Inc. | $87,130 | 25 years | 27,394 sq. ft. |
| KFC Management Company | $11,340 (average) | 10 years | 1,800 sq. ft. |
| KFC Management Company | $15,120 (average) | 10 years | 2,400 sq. ft. |
| Holiday Management Company | $33,000 | 10 years | 6,000 sq. ft. |
| Daley-Schroth Realty | $10,650 | 3 years | 1,500 sq. ft. |
| Totals | $157,240 | | 39,094 sq. ft. |

Gardner asserted that in January 1978, the plaintiff had only obtained the following leases:

| | | | |
|---|---|---|---|
| (1) Lucky Stores, Inc. | $87,130 | 25 years | 27,394 sq. ft. |
| (2) KFC Management Company | $14,400 | 20 years | 2,400 sq. ft. |
| (3) KFC Management Company | $10,800 | 20 years | 1,800 sq. ft. |
| (4) Century 21-Holm & Associates | $11,111 | 3 years | 1,565 sq. ft. |
| Totals | $123,441 | | 33,159 sq. ft. |

Gardner also asserted that the plaintiff had not provided State Farm with additional leases for at least 15,060 square feet of net rental space at annual rentals averaging no less than $6 per square foot.

The plaintiff filed a memorandum in opposition to the motion for summary judgment and an accompanying affidavit. In the affidavit the plaintiff stated that Holiday Management Company (Holiday) and Daley-Schroth Realty (described in paragraph 12) were unable to remain as lessees of the shopping center. In their place the plaintiff ob-

tained certain substitute tenants in accordance with amended paragraph 12. These eight leases totalled 11,485 square feet and annual rentals of $77,869.50, amounts in excess of the square feet and annual rentals of Holiday and Daley-Schroth Realty.

Although the plaintiff admitted that paragraph 18 was not fully satisfied, the plaintiff contended that he had until July 1, 1978, to satisfy this requirement. The plaintiff further denied that construction of the shopping center was incomplete on January 31, 1978.

In its reply memorandum State Farm agreed that the plaintiff was entitled to tender substitute leases for the leases of Holiday and Daley-Schroth Realty. However, State Farm asserted that pursuant to the express language of paragraph 12, the substitute leases must meet the "minimum net annual rentals and lease terms remaining at the start of loan amortization" as set forth in the schedule of the prescribed leases. State Farm admitted that it accepted a three-year lease from Century 21-Holm & Associates as a substitute for the three-year Daley-Schroth lease since the minimum net annual rental and square footage of the Century 21 lease exceeded those of the Daley-Schroth lease. However, State Farm did not accept any substitute for the Holiday lease since none of the tendered leases equalled the annual rental and lease term of the Holiday lease.

After hearing argument of counsel, the trial court granted State Farm's motion for summary judgment on January 14, 1980. The court found that none of the proposed substitutes for Holiday's leases satisfied the requirements for net annual rental and lease term as provided in amended paragraph 12; that the lease requirements of paragraph 18 were not satisfied on January 31, 1978, as required; and that State Farm was entitled to retain the $10,000 extension fee. Subsequently, the trial court denied plaintiff's motion for rehearing, and the plaintiff appeals.

The plaintiff argues that the trial court erroneously construed amended paragraph 12 of the commitment agreement. The parties agreed to amend paragraph 12 "by inserting the phrase 'or other leases acceptable to State Farm, which acceptance shall not be unreasonably withheld' after the word 'leases' in the first line of said paragraph."

The plaintiff contends that amended paragraph 12 should read: "Assignment of the following lease or other leases acceptable to State Farm which acceptance shall not be unreasonably withheld" (amendatory language underscored) and that the remainder of paragraph 12 should be deleted. The plaintiff argues that because the amending language was ambiguous, he was entitled to present extrinsic evidence to

establish the intent of the parties.

State Farm argues that the amendment to paragraph 12 should be *inserted* after the word leases in the first line of the paragraph and that no deletions are to be made from the paragraph.

In its order of January 14, 1980, the trial court found that paragraph 12, as amended, should read as follows:

"Assignment of the following leases or other leases acceptable to State Farm which acceptance shall not be unreasonably withheld, with provisions acceptable to us, with minimum net annual rental and lease terms remaining at the start of loan amortization as indicated ***"

In construing a contract, the primary objective is to determine and give effect to the intentions of the parties at the time they entered into the contract. (*Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 427 N.E.2d 585.) If the contract's terms are plain and unambiguous, the intent of the parties must be ascertained solely from the language of the contract. (*Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 186 N.E.2d 285; *Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 430 N.E.2d 631.) The issue of whether a contract is ambiguous is a question of law. *Public Relations Board, Inc. v. United Van Lines, Inc.* (1978), 57 Ill. App. 3d 832, 373 N.E.2d 727.

In the instant case the correspondence amending paragraph 12 clearly and unambiguously provided that certain words would be *inserted* after the word "leases." The letters of March 26, 1976, and April 1, 1976, did not state that the remainder of paragraph 12 would be deleted after the insertion. In fact, another amendment to the contract contained in the correspondence clearly provided for the deletion of a certain word. Thus, because the terms of the amendment were plain and unambiguous, the trial court correctly determined that extrinsic evidence was unnecessary to determine the intent of the parties.

The plaintiff cites *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 427 N.E.2d 1295, in which the appellate court held that in most circumstances a trial court should admit extrinsic evidence of intent before it determines whether an ambiguity exists in a contract. However, our supreme court has held that when a contract's terms are plain and unambiguous, the intent of the parties must be ascertained *solely* from the language of the contract. (See *Western Illinois Oil Co.* and cases cited therein.) To the extent that the holding in *URS Corp.* conflicts with the law set forth by our supreme court, we respectfully

decline to follow it.

■ Summary judgment is properly granted when the pleadings, depositions and admissions on file, together with any affidavits, establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57(3); *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) In the instant case the pleadings and affidavits establish as a matter of law that the plaintiff did not comply with paragraph 12 of the loan commitment. Thus, State Farm was justified in refusing to fund the loan commitment and in retaining the commitment and extension fees.

Since paragraph 12 was a condition precedent to the enforcement of the loan commitment, it is unnecessary for us to address plaintiff's argument that the other findings of the trial court were incorrect.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P. J., and RIZZI, J., concur.