

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2005

# In Re: Montgomery

Precedential or Non-Precedential: Precedential

Docket No. 04-1749

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Montgomery " (2005). *2005 Decisions.* Paper 189.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 04-1749 and 04-1880

_____

IN RE: MONTGOMERY WARD & CO., INCORPORATED,

Debtor

RELIANCE INSURANCE COMPANY;
UNITED PACIFIC INSURANCE;
RELIANCE SURETY CO;
RELIANCE NATIONAL INDEMNITY COMPANY;

v.

COLONIAL PENN FRANKLIN INSURANCE COMPANY

Travelers Casualty and Surety Company, as assignee
of the indemnity and certain other rights of
Reliance Insurance Company, for itself and as
successor in interest by merger with Reliance
Surety Company, United Pacific Insurance Company
and Reliance National Indemnity Company,

Appellants in No. 04-1749

AIG Premier Insurance Company, (f/k/a
Colonial Penn Franklin Insurance Company,
successor in interest for Forum Insurance Company)*,

Appellant in No. 04-1880

* (Pursuant to FRAP 43(b))

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 01-cv-00421)
Honorable Joseph J. Farnan, Jr., District Judge

Argued September 22, 2005

BEFORE: ROTH, FISHER and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: November 3, 2005)

Brian P. Flaherty (argued)
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street
22nd Floor
Philadelphia, PA 19103

   <u>Attorneys for Appellants/Cross-Appellees</u>

Jeffrey C. Wisler
Marc J. Phillips
Connolly Bove Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Donald Flayton (argued)
Kenneth M. Gorenberg
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 3000
Chicago, IL 60606

   <u>Attorneys for Appellee/Cross-Appellant</u>

---

OPINION OF THE COURT

---

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiffs Reliance Insurance Company, Reliance Surety Company, United Pacific Insurance Company, and Reliance National Indemnity Company (hereinafter "Reliance")[1] appeal from a judgment of the district court dismissing objections to and adopting the proposed findings of fact and conclusions of law of the bankruptcy court in this non-core case, and ultimately holding that Forum Insurance Company (hereinafter "Forum")[2]

---

[1]Reliance Insurance Company, Reliance Surety Company, United Pacific Insurance Company, and Reliance National Indemnity Company initiated this action by filing a complaint in the Eastern District of Pennsylvania. Reliance Insurance Company and United Pacific Insurance Company are Pennsylvania corporations with their principal places of business in Philadelphia, Pennsylvania. Reliance Surety Company is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania, or in Delaware. Plaintiff Reliance National Indemnity Company is a Wisconsin corporation with its principal place of business in Wisconsin or in Philadelphia, Pennsylvania.

At this point in the litigation, Travelers Casualty and Surety Company of America, as assignee of the indemnity and certain other rights of Reliance Insurance Company, for itself and as successor in interest by merger with United Pacific Insurance Company and Reliance National Indemnity Company is the successor to the original plaintiffs. Nevertheless, as a matter of convenience we will refer to the plaintiffs-appellants as "Reliance."

[2]Colonial Penn Franklin Insurance Company (now known as AIG Premier Insurance Company) is the interested appellee as the successor in interest by merger to Forum Insurance Company.

3

was not obligated to indemnify Reliance for losses it sustained on surety bonds it executed on behalf of Montgomery Ward & Co., Inc. (hereinafter "Montgomery Ward"), Forum's Chicago-based parent.  Even though it was the prevailing party in the district court, Forum has cross-appealed from the district court's judgment to the extent that the court did not uphold certain of its affirmative defenses to this action as the district court declined to address those defenses.  Montgomery Ward was at an intermediate level in a corporate hierarchy topped by Montgomery Ward Holding Corp. which owned all of the stock of Montgomery Ward.  Forum was, in turn, an indirect subsidiary of Montgomery Ward.[3]

Prior to the execution of the agreement underlying this litigation, Reliance had executed surety bonds on behalf of other companies in the Montgomery Ward family.  In conjunction with these bonds, Reliance secured a cross-indemnity agreement from Montgomery Ward and Montgomery Ward Holding Corp. as security for its undertakings and to protect it against the potential for up-streaming of funds from Montgomery Ward to Montgomery Ward Holding Corp.  Forum was not a party to, nor was it mentioned in that indemnity agreement, and Reliance did not issue on behalf of Forum the surety bonds that that agreement secured.  The parties refer to the Montgomery Ward and Montgomery Ward Holding Corp. cross-indemnity

---

As a matter of convenience we will refer to the defendant-appellee as "Forum."  At all times material to this litigation, Forum was an Illinois corporation with its principal place of business in Schaumburg, Illinois.

[3]The Montgomery Ward corporate hierarchy was as follows:

> Montgomery Ward Holding Corp.
> Montgomery Ward & Co., Inc.
> (Montgomery Ward)
> Signature Financial/Marketing, Inc.
> Montgomery Ward Insurance Co.
> Forum Insurance Company

agreement as the "Montgomery Ward Agreement" and we will use the same term to describe it.[4]

In 1996, Forum requested that Reliance issue two surety bonds on its behalf that Forum needed in connection with workers' compensation obligations it was undertaking in California and Arizona. At that time Reliance sought an additional indemnity agreement as its underwriters doubted that the extant Montgomery Ward Agreement reached far enough down the Montgomery Ward corporate hierarchy to cover losses that Reliance might incur by reason of issuing surety bonds on behalf of Forum. Ultimately Forum and Montgomery Ward jointly signed an indemnity agreement prepared by Reliance, entitled "Continuing Agreement of Indemnity Miscellaneous Surety Bonds," which read, in pertinent part:

> THIS AGREEMENT is made by the Undersigned for the continuing benefit of RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY (hereinafter

---

[4]The Montgomery Ward Agreement provided, in pertinent part:

> THIS AGREEMENT is made by the Undersigned for the continuing benefit of [the Reliance group] for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations: <u>Montgomery Ward Holding Corp. and Montgomery Ward & Co., Incorporated</u>

> (hereinafter referred to as Applicant)

App. at 14 (emphasis in original).

referred to collectively as the Surety) for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations: <u>Forum Insurance Company and Montgomery Ward & Co., Incorporated</u>.

(hereinafter referred to as Applicant)

App. at 58 (emphasis in original). Significantly, the agreement underscored Forum and Montgomery Ward. The parties refer to this agreement as the "Forum Agreement," and we will use the same term to describe it. Reliance subsequently issued two surety bonds on behalf of Forum, but inasmuch as Reliance never had to make any payment on the Forum bonds it never sought indemnification on the Forum Agreement for them.

In 1997, Montgomery Ward experienced financial difficulties and defaulted on the surety obligations Reliance had undertaken on its behalf. In light of the defaults, the obligees on these bonds made demands on Reliance for payment which Reliance satisfied. These payments directly led to this litigation as Reliance regarded the Forum Agreement as having created a cross-indemnification obligation requiring Forum to indemnify Reliance for those payments, and Reliance naturally requested Forum to honor that obligation.[5] Forum refused payment as it denied that the Forum Agreement obligated it to indemnify Reliance for those payments. Consequently, Reliance filed a diversity of citizenship action in 1997 in the Eastern District of Pennsylvania against Forum to recover its losses on the Montgomery Ward bonds from Forum on the Forum Agreement.

Inasmuch as Montgomery Ward filed a Chapter 11 bankruptcy petition in the District of Delaware, the district court

---

[5]We are not certain of the extent of recovery Reliance now seeks, but it undoubtedly is multi-million dollars in scope.

in the Eastern District of Pennsylvania transferred Reliance's case to the District of Delaware in which the district court referred the case to the bankruptcy court. The matter then went forward as an adversary proceeding in the bankruptcy court related to the bankruptcy case. Eventually, Reliance and Forum filed cross-motions for summary judgment in the adversary proceeding asking the bankruptcy court to construe the Forum Agreement and enter judgment in its favor.

Reliance argued that Forum was required to reimburse it for the payments it made on the Montgomery Ward bonds as, in its view, the Forum Agreement's plain words provided that its cross-indemnification provision applied to surety bonds Reliance issued on behalf of Forum and to surety bonds Reliance issued on behalf of Montgomery Ward. Forum contended, however, that the Forum Agreement required it to indemnify Reliance only on bonds that Forum and Montgomery Ward jointly sought. Its motion contended that the only bonds to which the Forum Agreement therefore could apply were ones which Forum itself requested and that inasmuch as Reliance never had to make good on behalf of Forum, Forum could not be liable to Reliance.[6]

Obviously Forum was taking an internally inconsistent position as it contended that it could be liable only on bonds that it jointly sought with Montgomery Ward yet it acknowledged that it would have been liable to Reliance on the Forum Agreement if Reliance had incurred a loss on the bonds Reliance issued solely on its behalf.[7] Forum's position led it to argue that

---

[6]As we point out below, Forum and Montgomery Ward did not apply for any bonds jointly.

[7]Forum set forth its position as follows:

> However, contrary to Reliance's claim, giving the relevant language its plain and ordinary meaning, the Agreement provides that its scope is limited to bonds jointly applied for by Forum and Wards. Therefore, the only bonds which this agreement can apply to are two surety bonds which Forum itself

7

it was entitled to summary judgment because the language of the Forum Agreement did not reach the bonds at issue in this litigation and Forum was not a party to the Montgomery Ward Agreement and thus could not be liable under it. In addition, Forum raised numerous affirmative defenses.[8]

---

> requested, which were never in default, and which Reliance admits are not at issue in this litigation.

App. at 247 (emphasis in original). The problem with this statement is that the second sentence could not follow from the first and the word "[t]herefore" connecting them was not appropriate as Montgomery Ward did not apply for the two surety bonds Forum requested from Reliance.

Forum adheres to its inconsistent position on this appeal. Thus, after telling us that "the language [of the Forum Agreement] can reasonably be interpreted as covering only bonds jointly applied for by Forum and Montgomery Ward," appellee's br. at 20, it tells us that "Forum has always denied that the Forum Agreement was intended to apply to bonds other than certain bonds specifically requested and applied for by Forum." Id. at 39. Of course, those bonds are the two bonds for Forum's California and Arizona workers' compensation obligations for which Montgomery Ward did not apply.

[8]The affirmative defenses are that the Forum Agreement, if found to apply as Reliance contends, is unenforceable: due to vagueness and indefiniteness; due to the absence, inadequacy, or failure of consideration; because it is illegal under the Illinois Insurance Code; because it is void or voidable by the Illinois Director of Insurance; as it violates public policy as reflected in the provisions of the Illinois Insurance Code; because it was executed by a Forum officer acting beyond the scope of his authority; because the officer who signed it had neither actual nor apparent authority to do so; because it was a product of mutual mistake; because it was a product of Forum's unilateral mistake; as barred by the doctrine of equitable estoppel; and as barred by the doctrine of promissory estoppel. Forum also alleges that Reliance breached its duty of good faith and fair dealing.

Prior to a trial in the adversary proceeding, the bankruptcy court, in response to the parties' cross-motions for summary judgment, determined that the Forum Agreement was ambiguous, a conclusion that led it to deny the motions.[9] The court believed that an ambiguity arose from the combination of the phrase, "any one or more of the following persons, firms or corporations" followed by "Forum Insurance Company and Montgomery Ward & Co. Incorporated" described singularly as "Applicant."[10]

Thereafter the bankruptcy court conducted a bench trial to determine the scope of the Forum Agreement in the face of the ambiguity and, in particular, to determine if the parties had reached a meeting of the minds on the question of whether the Forum Agreement covered the Montgomery Ward bonds. On June 1, 2001, the bankruptcy court entered a judgment against Reliance, accompanied by a memorandum opinion, which the court stated constituted its findings of fact and conclusions of law. Ruling in favor of Forum, the bankruptcy court held that the extrinsic evidence surrounding the execution of the Forum agreement indicated that Forum never intended to indemnify Reliance for losses Reliance suffered by reason of being a surety on the Montgomery Ward bonds. Rather, Forum could be responsible only for losses Reliance suffered on account of the

---

[9]The bankruptcy court entered summary judgment in Reliance's favor with respect to Forum's affirmative defense of illegality but did not rule on any of Forum's other affirmative defenses.

[10]Reliance summarizes the court's analysis succinctly: "[T]he court held, it was possible that the contract could be read in either one of two ways: It could be read as Reliance suggested; to apply to bonds executed on behalf of Forum and to bonds executed on behalf of Montgomery Ward; or [i]t could be read as Forum suggested; to apply only to bonds executed pursuant to a joint application by Forum and Montgomery Ward . . . ." Appellant's br. at 11.

9

issuance of Forum's own bonds.[11]

Reliance filed objections to the ruling pursuant to Federal Rule of Bankruptcy Procedure 9033, and also filed an appeal under 28 U.S.C. § 158 as a protective measure in the event that the district court determined that the bankruptcy court's adjudication was a final judgment. Reliance took these alternative steps out of caution because it was not sure whether the bankruptcy court proceedings should be regarded as core or non-core within the Montgomery Ward bankruptcy proceedings.

When the district court considered the case, it, too, was unsure as to how to treat the bankruptcy court proceedings. Thus, the district court on March 14, 2002, remanded the case to the bankruptcy court for it to determine if the matter was core or non-core. The bankruptcy court on July 1, 2002, found that the matter was non-core following which on October 22, 2002, the district court, which agreed that the matter was non-core, entered an order concluding that the bankruptcy court's findings were to be treated as proposed findings of fact and conclusions of law to which Reliance could file objections.[12]

---

[11]The items of extrinsic evidence considered by the court, which led to its conclusion that Forum never intended to indemnify Reliance for losses it suffered by reason of issuance of the Montgomery Ward bonds, were: the failure to obtain a resolution by the board of directors or side letter approving of the cross-indemnification agreement, as was done for the Montgomery Ward Agreement and was mandated by Reliance's own underwriting guide; the increase in Reliance's financial exposure due to the issuing of bonds for Forum was disproportionately small compared to the potential $40 million liability that Forum was to assume on the Montgomery Ward bonds; and "the credible evidence adduced at trial established that Forum did not want a cross-indemnity and the broker had no idea that Reliance wanted a cross-indemnity." App. at 20.

[12]The bankruptcy court makes final decisions in core matters which can be appealed to the district court. But in non-core cases the bankruptcy court can make only recommendations to the

The district court, exercising de novo review, ruled on the matter on February 13, 2004, entering judgment in favor of Forum. It adopted all of the bankruptcy court's post-trial proposed findings of fact and conclusions of law and issued its own memorandum opinion. The district court agreed with the bankruptcy court's conclusion that the Forum Agreement was ambiguous, a conclusion it predicated on the use of the singular word "Applicant," in connection with the phrase "any one or more of the following persons, firms or corporations" in the Forum Agreement. The court continued by noting that because it "reasonably interpreted" the Forum Agreement to be ambiguous, it was necessary and appropriate to consider extrinsic evidence related to the parties' intent. The district court noted that "the extrinsic evidence adduced at trial demonstrated that Forum was only willing to give an indemnity with respect to the two bonds for which it had applied and that Forum did not intend to indemnify Reliance for Montgomery

---

district court. No party questions the bankruptcy and district courts' determinations that this matter was non-core. Nevertheless, in view of the jurisdictional significance of this determination we have reviewed the matter ourselves, see In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1176 (3d Cir. 1996), and are satisfied that it is non-core. We note, however, that this case differs from Guild & Gallery Plus because that case was initiated as an adversary proceeding in the bankruptcy court whereas Reliance brought this action in the Eastern District of Pennsylvania invoking its diversity of citizenship jurisdiction which survived the case's transfer to Delaware and the change in parties that we describe in supra notes 1 and 2. See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 111 S.Ct. 858 (1991). Moreover, in Guild & Gallery Plus the bankruptcy court attempted to exercise core jurisdiction whereas in this case the bankruptcy court treated the case as a non-core matter, so that the district court exercised original jurisdiction, and thus did not act in an appellate capacity. The confluence of these circumstances satisfies us that the district court in Delaware had subject matter jurisdiction in this case.

11

Ward's bonds."[13]  App. at 55.

Reliance filed an appeal to this court from the February 13, 2004 judgment and Forum filed a cross-appeal which it explains was intended "principally to preserve on appeal all of Forum's affirmative defenses, which the District Court did not reach or need to reach for its decision, but any one of which would preclude Reliance's claims, even if Reliance's construction of the Forum Agreement were correct."  Appellee's br. at 7.

## II.  DISCUSSION

### a.  Jurisdiction

Reliance initiated this matter as a diversity of citizenship action in the Eastern District of Pennsylvania which had jurisdiction under 28 U.S.C. § 1332.  On Forum's motion, the court transferred the case to the District of Delaware.[14]  In Delaware the district court referred the matter to the bankruptcy court which considered it under 28 U.S.C. § 157(c)(1) and thus made proposed findings of facts and conclusions of law. Reliance filed objections to those findings and conclusions pursuant to Rule 9033 following which the district court on a de novo basis entered a final judgment adopting the proposed findings of fact and conclusions of law.  Consequently, the operative determination from which the parties have appealed is

---

[13]Inasmuch as the district court adopted the bankruptcy court's proposed findings of facts and conclusions of law, it declined to address the counter-objections which Forum lodged as alternative arguments in the event that the court declined to adopt the bankruptcy court's proposed findings of fact and conclusions of law.

[14]The diversity jurisdiction survived the transfer.  See supra note 12.

that of the district court and not the bankruptcy court.[15]  We have jurisdiction under 28 U.S.C. § 1291.

      b.  Standard of Review

We exercise plenary review of the legal question of whether an agreement is ambiguous.  LaSalle Nat'l Bank v. Serv. Merch. Co., 827 F.2d 74, 78 (7th Cir. 1987); see also  Nat'l Tea Co. v. Am. Nat'l Bank and Trust Co., 427 N.E.2d 806, 808 (Ill. App. Ct. 1981).  If we determine that an agreement is unambiguous, we then must declare its meaning as a matter of law.  LaSalle Nat'l Bank, 827 F.2d at 78.  But if we find an agreement to be ambiguous its meaning becomes a question for the trier of fact.  Id.  In that event we would review the district court's findings of fact on a clear error basis.  Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 208 (3d Cir. 2001).[16] Forum, which is an Illinois corporation and at the time the Forum agreement was executed had its principal office in Illinois, contends that Illinois law is applicable in this action, and we will decide the case on that basis.[17]

      c.  Reliance's appeal

---

[15]Nevertheless we make frequent reference to the bankruptcy court's determinations as the district court adopted its findings of fact and conclusions of law.

[16]As will be seen we do not find the agreement to be ambiguous and, accordingly, we do not exercise clear error review on this appeal.

[17]There is a choice-of-law disagreement in this case, though its resolution does not impact the outcome of this appeal.  While Forum contends that Illinois law is applicable, Reliance believes that Pennsylvania law applies.  The bankruptcy and district courts cited law from both jurisdictions.  We agree with Forum, however, to the extent that it indicates that "there is little if any practical significance to the choice of law, at least as to the fundamental contract interpretation issues in this case."  Appellee's br. at 23 n.7.

The central issue on Reliance's appeal is whether the Forum Agreement is ambiguous so that it reasonably can be construed to mean either that (a) it is applicable to bonds Reliance executed on behalf of Forum and to bonds Reliance executed on behalf of Montgomery Ward, or (b) it applies only to bonds Reliance executed pursuant to a joint application by Forum and Montgomery Ward. The bankruptcy and district courts analyzed the Forum Agreement and concluded that it was ambiguous and thus looked to extrinsic evidence to ascertain the parties' intent. Of course, they did not adopt the first possibility, i.e., that it was applicable to bonds Reliance executed on behalf of either Forum or Montgomery Ward.

A court should construe an indemnity agreement in accordance with general principles of contract law. Taracorp, Inc. v. NL Indus., Inc., 73 F.3d 738, 743 (7th Cir. 1996) (applying Illinois Law). A court's primary objective in construing an agreement is to determine and give effect to the parties' intentions at the time they entered into the agreement. Sheridan v. James W. Rouse & Co., 441 N.E.2d 647, 650 (Ill. App. Ct. 1982). If the agreement's terms are plain and unambiguous, a court must ascertain the parties' intent solely from its language. Western Ill. Oil Co. v. Thompson, 186 N.E.2d 285, 287 (Ill. 1962); Country Serv. & Supply Co. v. Harris Trust & Sav. Bank, 430 N.E.2d 631, 634-35 (Ill. App. Ct. 1981).[18] Forum acknowledges that, "[t]he terms of the

_____

[18]Neither party seriously argues that there is a conflict in the law of contractual interpretation between Pennsylvania and Illinois, the two jurisdictions whose law the parties contend could apply in this case. See Appellee's br. at 23. However, it appears that Pennsylvania law may be more permissive than Illinois law in allowing the introduction of extrinsic evidence to establish an ambiguity. Compare Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92-93 (3d Cir. 2001) (holding that Pennsylvania law allows use of extrinsic evidence to establish a latent ambiguity), with Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 885 (Ill. 1999) (holding that Illinois law follows a strict "four corners" approach and does not allow extrinsic

agreement should be given their plain and ordinary meaning, unless to do so would do violence to the evident intent and purpose of the contracting parties." Appellee's br. at 25 (citing Perkins & Will v. Sec. Ins. Co., 579 N.E. 2d 1122, 1126 (Ill. App. Ct. 1991)).

The traditional test for determining whether an agreement is ambiguous is the four corners or plain meaning test. Under this test, a written agreement is "presumed to speak [to] the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used." URS Corp. v. Ash, 427 N.E.2d 1295, 1299 (Ill. App. Ct. 1981) (quoting Western Ill. Oil Co. v. Thompson, 186 N.E.2d at 287). The Court of Appeals for the Seventh Circuit explained the virtues of the four corners test in Matthews v. Sears Pension Plan, 144 F.3d 461, 466 (7th Cir. 1998) (applying Illinois law):

> If a written contract is clear, that is, if reading it one doesn't sense any ambiguity, gap, or contradiction that makes one doubt one's ability to understand the contract merely by reading it, the court normally won't look further for evidence of meaning. This is the venerable 'four corners' rule. Its purpose is to protect contracting parties from the uncertainty that would attend their obligations if a judge or jury were free to consider evidence that would contradict the terms of a written contract . . . . In such a regime all contracts would be revisable by judges and juries . . . . The security that one seeks from having a written statement of one's legal rights and duties would be destroyed.

evidence to establish an ambiguity in an integrated contract). We need not resolve this possible conflict between Pennsylvania and Illinois law in the context of this case, as both the contractual language and extrinsic evidence of the parties' intent demonstrate conclusively that the Forum Agreement is susceptible to only one interpretation. See also infra note 19.

15

As Forum argues, "[c]ontract construction is limited to the language of the contract only where that language is unambiguous." Appellee's br. at 28 (citing River Forest State Bank & Trust Co. v. Rosemary Joyce Enter., Inc., 689 N.E.2d 163, 167 (Ill. App. Ct. 1997); Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994)).[19]

---

[19]Certain Illinois appellate decisions, however, have suggested that a court may consider extrinsic evidence in determining whether a contract is ambiguous. See, e.g., Ash, 427 N.E.2d at 1300 (appellate court held that in most circumstances a trial court should admit extrinsic evidence of intent before it determines whether an ambiguity exists in a contract); see also Sunstream Jet Express, Inc. v. Int'l Air Serv. Co., 734 F.2d 1258, 1268 (7th Cir. 1984) (citing cases). The Court of Appeals for the Seventh Circuit recognized this apparent split, i.e., as to whether or not consider extrinsic evidence in determining whether a contract is ambiguous, in Metalex Corp v. Uniden Corp., 863 F.2d 1331, 1335 (7th Cir. 1988).

The Illinois Supreme Court, however, has held, "that the four corners rule precludes the consideration of extrinsic evidence where a contract contains an integration clause and is facially unambiguous." Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 886 (Ill. 1999). The court, however, expressly declined to rule on whether a court may apply the provisional admission approach (i.e., the "extrinsic ambiguity approach") to interpret a contract which does not contain an integration clause . Id. at 885 n.1. It did note, however, that it never formally had adopted an approach that allowed the use of extrinsic evidence to determine if, in fact, a contract was ambiguous. Id. at 885.

Recent opinions from Illinois appellate courts have indicated that Illinois will follow Air Safety closely and utilize a strict adherence to the four corners interpretive approach. See, e.g., Platt v. Gateway Int'l Motorsports Corp., 813 N.E.2d 279, 283 (Ill. App. Ct. 2004); Duresa v. Commonwealth Edison Co., 807 N.E.2d 1054, 1062-63 (Ill. App. Ct. 2004). While it is true that the Forum Agreement does not have an integration clause that absence is not significant as the agreement is so clear and cannot be construed as

16

Illinois law makes clear that merely because the "parties to a contract disagree about its meaning does not [necessarily] show that it is ambiguous." FDIC v. W.R. Grace & Co., 877 F.2d 614, 621 (7th Cir. 1989). Rather, an agreement is ambiguous only if it is "reasonably or fairly susceptible to more than one construction." Omnitrus Merging Corp. v. Ill. Tool Works, Inc., 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993) (internal quotation marks and citation omitted); Lenzi v. Morkin, 452 N.E.2d 667, 669 (Ill. App. Ct. 1983) (emphasis added), aff'd on other grounds, 469 N.E.2d 178 (Ill. 1984)[20]; see also Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164 (3d Cir. 2001) ("The determination whether a contract term is ambiguous is a question of law that requires a court to hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings.") (citations and internal quotation marks omitted).

Forum contends that, "[b]ecause the language can reasonably be interpreted as covering only bonds jointly applied for by Forum and Montgomery Ward, the Bankruptcy Court correctly denied Reliance's Motion for Summary Judgment." Appellee's br. at 20. It continues by noting, "the words Reliance actually wrote into the Forum Agreement cover bonds applied for by 'Forum and Montgomery Ward.' Reliance elected to identify the covered bonds as those requested by one set of joint applicants. Consequently, under the plain language, if Forum – one of the requisite joint applicants – did not apply for a given bond, that bond is not covered by the Forum Agreement."[21]

---

Forum urges.

[20]In its opinion the Supreme Court of Illinois indicated that "[i]n the absence of an ambiguity, the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties."

[21]The joint application approach largely is centered around the definition of the word "and" defined as, "a logical operator that

Appellee's br. at 27. The bankruptcy and district courts, apparently seeing this meaning as an alternative reading to the one put forth by Reliance, i.e., that the Forum Agreement applied to surety bonds Reliance issued on behalf of either Montgomery Ward or Forum, found that the Forum Agreement was ambiguous, and thus searched outside its four corners for additional indicators of the parties' intent.[22]

We hold that the bankruptcy and district courts' conclusions are erroneous because the Forum Agreement is not ambiguous as there is no competing valid interpretation of the Forum Agreement that differs from that Reliance advances. Initially in this regard we point out that Forum's construction is not reasonable because Reliance did not issue any bonds to which Forum's proposed reading would apply and Montgomery Ward was not an applicant to the two bonds Forum needed to secure its California and Arizona workers' compensation obligations. Certainly, Forum, at the very least, must have intended the Forum Agreement to apply to those bonds, and Forum acknowledges as much. However, if we follow Forum's approach, given that Montgomery Ward was not an applicant for

---

requires both of two inputs to be present or two conditions to be met." App. at 257 (Forum's Brief for Summary Judgment quoting Merriam-Webster Collegiate Dictionary, tenth edition, 1994). As Reliance notes, see appellant's br. at 17 n.8, this definition of "and" was coined and used in computer programming. It is more commonly thought of as "AND." Reliance argues that a more appropriate definition of "and" is simply a conjunction used to join words in a list. Appellant's br. at 16.

[22]The district court also found ambiguity in the singular use of the word "Applicant" in connection with the phrase "any one or more of the following persons, firms or corporations." App. at 54. The use of the phrase "Applicant" was chosen to define a particular entity or entities for ease or use throughout the remainder of the document. As Reliance notes, Forum said in its opening brief on its motion for summary judgment, "[g]iving it its plain and ordinary meaning, 'applicant' denotes the person or persons who 'apply' for the issuance of a bond . . . ." App. at 255; Appellant's br. at 16.

18

the bonds that Forum sought, we would be holding that Forum signed an indemnity agreement that did not even apply to the bonds it sought from Reliance and for which it was giving Reliance an indemnification.

The case is remarkable because the bankruptcy court understood that its reasoning was anomalous as it explained:

> [A]lthough everybody on this record has agreed that the Forum bonds were covered, that was the intent, this agreement doesn't cover the Forum bonds in and of themselves, anyway, because as I understand it, Montgomery Ward was not an applicant on the Forum bond request. And so to that extent, it doesn't reach those bonds either.

App. at 1345. Nevertheless the bankruptcy court erroneously concluded that because Reliance suffered no losses on the Forum bonds, the issues of whether the Forum bonds were covered by the Forum Agreement and Reliance's corresponding interpretation were not germane. Remarkably, faced with the problem that the phantom ambiguity it identified could mean that Forum's own bonds were not covered by the Forum Agreement, the bankruptcy court opined that if there had been a loss on the Forum bonds it might have been necessary "to reform the [Forum Agreement] so that it can be covered." Id. at 1348. Thus, the bankruptcy court rejected a finding that the Forum Agreement meant what it said in favor of according it a meaning that could not have reflected the parties' intent.

It should be obvious that a construction of an agreement that is inconsistent with the very purpose for which the parties entered into the agreement cannot possibly be reasonable. Simply stated, Reliance never issued a surety bond jointly on behalf of both Forum and Montgomery Ward; thus, the Forum Agreement, as construed by Forum, did not secure Reliance for anything. Reliance correctly notes, "[t]his realization . . . . should have ended the inquiry as to contract's interpretation, compelling a conclusion in favor of Reliance, since only one interpretation of the words – the one proffered by Reliance –

19

produced the result everyone – even Forum – agreed was their intent." Appellant's br. at 20. Given that there was only one construction of the agreement that was reasonable, it was not ambiguous, and, therefore, the bankruptcy and district courts erred by looking at extrinsic evidence to decipher the intent of the parties.

As we have emphasized, this case does not turn on extrinsic evidence. Nevertheless we make a comment on one point that the district court made with respect to that evidence. It said that the "evidence adduced at trial demonstrated that Forum was only willing to give an indemnity with respect to the two bonds for which it had applied and that Forum did not intend to indemnify Reliance for Montgomery Ward's bonds." App. at 55. Yet that finding cannot be squared with the language of the Forum Agreement in which Forum, in the plainest terms, agreed to save harmless and indemnify Reliance from all loss and expense "in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations: Forum Insurance Company and Montgomery Ward & Co., Incorporated." App. at 58. If Forum was willing to give an indemnity only with respect to the bonds it sought then surely it should have insisted that Montgomery Ward & Co., Incorporated be deleted from the quoted phrase as its presence there could not have been consistent with its intent.

But even laying that point aside, the plain language of the Forum Agreement necessitates that Forum's argument must fail, and we independently and principally predicate our result on that language. As Forum notes in its brief, "the terms of the agreement should be given their plain and ordinary meaning . . . ." Appellee's br. at 25 (citing Perkins & Will v. Sec. Ins. Co. of Hartford, 579 N.E. 2d at 1126). The Forum Agreement guarantees Reliance against loss in connection with bonds executed: "on behalf of any one or more of the following persons, firms, or corporations: Forum Insurance Company and Montgomery Ward & Co., Incorporated." App. at 58 (emphasis added with respect to "any one or more"). The district court, adopting the conclusions of the bankruptcy court, found that the only intent of the Forum Agreement was to provide an

20

indemnification for the Forum bonds.[23]   This understanding, i.e., that the agreement was applicable only in cases in which the bond was issued on behalf of Forum, could not possibly be correct; after all, why would Montgomery Ward even be mentioned if that was the case?  Nor, of course, could the Forum Agreement apply to bonds issued only on behalf of Montgomery Ward because in that event there would be no rationale as to why Forum would be mentioned.  Moreover, Montgomery Ward and Forum are treated identically in the critical language in the Forum Agreement we quote above.  Furthermore, the indemnification could not be exclusive to either Forum or Montgomery Ward, as the agreement clearly indicated that the indemnification was for payments Reliance made on behalf "of any one or more" of the listed companies.  App. at 58.   Finally, the argument that the agreement requires a joint application cannot be squared with its "any one or more" language.

We emphasize the following point.  "One or more" must mean (1) Forum or (2)  Montgomery Ward or (3) Forum and Montgomery Ward.  The word "one" when followed by "more" when, in turn, followed by the listing of two entities simply must mean either entity or both entities.  It cannot mean only both entities as the word "one" plainly is intended to mean something less than and different than "more."  Indeed, this dual meaning explains why the disjunctive "or" is used between "one" and "more."  Overall, we have no doubt but that the district court erred as a matter of law when it rejected Reliance's claim for indemnification from Forum for Reliance's losses on the Montgomery Ward bonds on the ground that the Forum Agreement did not include those bonds.  Thus we are

_____

[23] The bankruptcy court stated, "[t]he only shared intent was to provide indemnity for the Forum bonds.  There was no evidence that Forum intended to indemnify Reliance for the Montgomery Ward bonds."  App. at 42.  The district court opined, "Forum did not intend to indemnify Reliance for Montgomery Ward's bonds."  App. at 55.

constrained to reverse.[24]

### d. Forum's appeal

At the time that the bankruptcy court denied both parties summary judgment it ruled against Forum on its contention that the Forum Agreement could not be enforced against it on the ground that it was illegal. It did not rule, however, on Forum's other affirmative defenses. When the case reached the district court it adopted the bankruptcy court's proposed findings of fact and conclusions of law entered on June 1, 2001, after the bench trial, but did not adopt the bankruptcy court's determination on the summary judgment rejecting the illegality defense. Rather it indicated that:

> Because the Court adopts the proposed findings of facts and conclusions of law issued by the Bankruptcy Court, the Court declines to address Forum's Counter - Objections which were lodged with the Court as alternative arguments in the event that the Court declined to adopt the Bankruptcy Court's proposed findings of fact and conclusions of law.

App. at 57 n.2. Forum has raised the same issues on these appeals. We, however, will not consider them in the first instance as the district court did not pass on them.[25] Thus, on the remand that we are directing, Forum may renew its affirmative defenses in their entirety, including the illegality defense. We,

_____

[24]In its brief Reliance contends that the district court held that Forum's president did not have the authority to sign the Forum Agreement. Forum answers that the court did not make such a finding. We agree with Forum as we do not find that the court's discussion gives us an independent basis to affirm and accordingly we will not consider the point. Forum, however, may raise the point on the remand that we are directing.

[25]We also point out that the disposition of one or more of the defenses might require fact finding.

however, will dismiss Forum's cross-appeal as it was neither necessary nor appropriate for Forum to file it as it does not seek any relief on the cross-appeal beyond the upholding of the district court judgment of February 13, 2004. See Rite Aid of Pa., Inc. v. Houston, 171 F.3d 842, 853 (3d Cir. 1999). Indeed, in its brief it almost acknowledges as much as it indicates that it filed its appeal principally to preserve its affirmative defenses.

## III.  CONCLUSION

For the foregoing reasons the judgment of February 13, 2004, will be reversed, and the case will be remanded to the district court for further proceedings consistent with this opinion. By this opinion we have established that the Forum Agreement as executed is applicable to the Montgomery Ward bonds and that Forum's cross-indemnification obligation applies to losses Reliance suffered on those bonds. Thus, the remaining issues relate to Forum's affirmative defenses and, if it is liable, damages. Forum's appeal will be dismissed.

––––––––––