**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0547n.06

No. 16-3210

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 26, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CARRIZO (UTICA) LLC, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| CITY OF GIRARD, OHIO et al., | ) | |
| | ) | **OPINION** |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: MOORE, ROGERS, and SENTELLE,[*] Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This appeal stems from a lawsuit by Plaintiff-Appellant Carrizo (Utica) LLC ("Carrizo") against Defendant-Appellee City of Girard, Ohio ("Girard") and two other defendants, Huntington Energy Group, LLC ("Huntington") and D&L Energy, Inc. ("D&L").[1] The lawsuit stems from a dispute over an oil and gas lease between Girard and D&L, which D&L then assigned to Carrizo. After Carrizo acquired the lease, Girard disavowed it. Following a trial on the first phase of the bifurcated proceedings, a jury determined that the lease was valid. Carrizo then sought to amend its complaint to add a breach-of-contract claim against Girard and a slander-of-title claim against Girard and its mayor,

---

[*]The Honorable David B. Sentelle, Senior United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

[1]Huntington did not file a brief in this appeal because it is currently in bankruptcy. D&L did not file a brief in this appeal because it is currently in bankruptcy and because it determined that the jury verdict resolved all claims involving D&L and this appeal does not impact that verdict.

James J. Melfi ("Melfi"). The district court denied Carrizo's motion to amend, holding that Carrizo had not shown good cause to amend the complaint after the scheduling order's deadline, that Girard would be prejudiced by the late amendment, and that the slander-of-title claim would be futile. For the reasons discussed below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

In 2006, Girard entered into an oil and gas lease with D&L. R. 1–2 (Lease) (Page ID #30–34). The lease gave D&L exclusive rights to drill for oil and gas on four parcels of property and required D&L to pay Girard royalties on extracted oil and gas. *Id.* at ¶ 1. It also gave D&L the right to assign and transfer the lease. *Id.* at ¶ 13. In 2011, through a series of deals that also involved Huntington, D&L assigned the lease to Carrizo. R. 1–7 (Partial Assignment of Oil, Gas and Mineral Leases) (Page ID #66–69).

In 2011, after Carrizo acquired the lease, Girard officials began asserting that the lease was invalid. R. 67–2 (12/16/2011 Letter from Melfi to D&L) (Page ID #639). Girard invited D&L to propose a new lease reflecting current prices (which would have meant higher payments to Girard). *Id.* Girard's argument that the lease was invalid was twofold: First, it asserted that the lease had never been valid because of various deficiencies. R. 16 (Def.'s Answer to Compl. at ¶¶ 12–13, 17–18) (Page ID #173–74). Second, it asserted that even if the lease was initially valid, D&L or its assignees had breached the agreement. R. 16 (Def.'s Answer to Compl. at ¶¶ 14, 30) (Page ID #173, 177–78). Carrizo maintained that the lease was valid and had not been breached. R. 1 (Compl. at ¶¶ 28–30) (Page ID #9–10).

On February 22, 2013, Carrizo filed its lawsuit seeking declaratory and injunctive relief stating that the lease was valid and preventing Girard from impairing Carrizo's rights under the lease; in the alternative, Carrizo sought damages against D&L and Huntington for assigning Carrizo an invalid lease. R. 1 (Compl.) (Page ID #1–20). On October 14, 2013, Carrizo, Girard, and D&L brought (and Huntington did not oppose) a Joint Motion to Bifurcate Discovery and Trial on Threshold Issue of Lease Validity, Enforceability and Scope. R. 35 (Joint Mot. to Bifurcate) (Page ID #311–22). In the motion, the parties explained that the threshold issues concerning the validity, continuing enforceability, and scope of the lease could render other issues moot. R. 35 (Joint Mot. to Bifurcate at 6) (Page ID #316). The district court granted the motion. R. 36 (Order Granting Mot. to Bifurcate) (Page ID #330–39).

According to the bifurcation order, Phase I of the case dealt with: Carrizo's first and second claims, which were made against Girard and sought to establish the validity of the lease and to enjoin Girard from impairing Carrizo's rights under the lease; Girard's counterclaims and cross-claims "with respect to its requests for declaratory judgment, to quiet title, and liability determinations on its claims asserting a breach of the Lease (but not damages)"; and "[a]ny Counterclaim or Crossclaim to be filed by D&L upon its return to participating in this case after the automatic stay is lifted regarding the validity, continued enforceability or scope of the Lease." R. 36 (Order Granting Mot. to Bifurcate at 9) (Page ID #338). Phase II dealt with: Carrizo's third through eighth claims, which were against D&L and Huntington and relevant only if Carrizo lost and Girard prevailed on claims one and two; Girard's counterclaims and

crossclaims "with respect to damages if liability is found to exist during Phase 1"; and "[a]ny Counterclaim or Crossclaim to be filed by D&L upon its return to participating in this case after the automatic stay is lifted that does not involve the validity, continued enforceability or scope of the Lease." R. 36 (Order Granting Mot. to Bifurcate at 9–10) (Page ID #338–39). Notably, none of the claims in Phase II were claims against Girard. In addition, Carrizo's Phase I claims against Girard did not seek money damages. On November 2 through November 5, 2015, the district court held a jury trial on Phase I. The jury found in favor of Carrizo,[2] determining that the lease was valid and had not been breached. R. 172 (Jury Verdict Forms) (Page ID #2883–85).

On December 2, 2015, Carrizo filed a Statement Regarding Phase II, which acknowledged that the jury verdict mooted Carrizo's claims against Huntington and D&L (initially Carrizo's only claims for damages).[3] R. 173 (Pl.'s Stmnt. Re Phase II at 1) (Page ID #2889). The statement also announced Carrizo's intention to bring slander-of-title and breach-of-contract claims against Girard (seeking damages). *Id*. at 2 (Page ID #2890).

---

[2]The finding was also in favor of cross-claimants D&L and Bobcat Minerals, LLC ("Bobcat"). Bobcat was added as a cross-claim defendant in August 2015 and held an interest in the acreage at issue in the lease.

[3]D&L filed a position statement explaining that no issues as to D&L remained in the litigation. R. 176 (Def. D&L's Stmnt. Re Phase II at 1) (Page ID #2985). Huntington did not file a statement. Girard filed a statement requesting time to answer Carrizo's motion to amend its complaint. R. 175 (Def. Girard's Stmnt. Re Phase II at 2) (Page ID #2978). Bobcat filed a statement in response to Carrizo. Bobcat's statement explained that, "To the extent Carrizo is permitted to proceed, Bobcat also wishes to assert its claims for the damage it suffered to its overriding royalty interest as a result of the defected title." R. 178 (Response Stmnt. of Bobcat Re Phase II at 1) (Page ID #2996).

Contemporaneously, Carrizo filed a motion to amend its complaint. R. 174 (Pl.'s Mot. for Leave to File First Am. Compl.) (Page ID #2892–99). Carrizo stated that "Phase II of the trial will encompass the parties' claims for damages" and accordingly "Plaintiff now seeks to demonstrate that it was harmed by Girard's unwarranted disavowal of the Lease's validity." *Id.* at 3–4 (Page ID #2894–95). Carrizo sought to bring a breach-of-contract claim against Girard. R. 174–1 (Pl.'s First Am. Compl. at ¶¶ 94–99) (Page ID #2919–20). Carrizo also sought to add Melfi as a defendant and bring a slander-of-title claim against Girard and Melfi. *Id.* at ¶¶ 88–93 (Page ID #2919). In support of these claims, Carrizo alleged that it entered a purchase and sale agreement with Halcón Energy Properties, Inc. ("Halcón") that encompassed Carrizo's lease with Girard. *Id.* at ¶¶ 37–38 (Page ID #2910). When Halcón became aware of statements that the lease was not valid, it "defected title to the [l]ease [and] Carrizo was not paid." *Id.*

The district court denied Carrizo leave to amend. R. 181 (Order at 3) (Page ID #3012). Having denied leave to amend, the district court entered judgment in favor of Plaintiff Carrizo and the cross-claimants. R. 181 (Order at 10) (Page ID #3019); R. 182 (Judgment Entry) (Page ID #3021).[4] Carrizo appealed the denial of leave to amend its complaint.

## II. DISCUSSION

### A. Standard of Review

"We ordinarily review the district court's denial of a motion to amend a pleading for abuse of discretion." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). "A district

---

[4]The cross-claimants were D&L and Bobcat. The district court did not enter judgment as to Huntington, due to its pending bankruptcy. R. 182 (Judgment Entry) (Page ID #3021).

court's decision is to be afforded great deference; it will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003) (internal quotation marks omitted). "When, however, the district court denies the motion to amend on grounds that the amendment would be futile, we review denial of the motion *de novo*." *Inge*, 281 F.3d at 625.

**B. Good Cause**

Seeking leave to amend a complaint after the scheduling order's deadline implicates two Federal Rules of Civil Procedure, Rule 15 and Rule 16. *Leary*, 349 F.3d at 909. Rule 15 provides that "The court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 16 requires the district court to enter a scheduling order that includes a deadline for amending pleadings. Fed. R. Civ. P. 16(b)(3)(A). Rule 16 also establishes that the district court can modify its scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). Consequently, notwithstanding Rule 15's directive freely to give leave to amend, a party seeking leave to amend after the scheduling order's deadline must meet Rule 16's good-cause standard in order for the district court to amend the scheduling order. *Leary*, 349 F.3d at 909. Parties "can demonstrate 'good cause' for their failure to comply with the original schedule[] by showing that despite their diligence they could not meet the original deadline." *Id*. at 907.

The district court held that Carrizo did not show good cause to amend because it had not been diligent. R. 181 (Order at 5) (Page ID #3014). Carrizo argues that the proposed amendments "could not have been addressed until Phase II" because the slander-of-title and breach-of-contract claims depended on a finding that the lease was valid. App. Br. at 10. Carrizo argues that it was diligent because it sought to add these claims "within thirty days of the completion of Phase I." *Id.*

The district court rejected these arguments when Carrizo raised them in its motion for leave to amend. The district court explained that Carrizo could have brought its slander-of-title and breach-of-contract claims earlier because Carrizo was aware of Melfi's and Girard's disavowal of the lease before the deadline for amending pleadings. R. 181 (Order at 5) (Page ID #3014). The district court also emphasized that Carrizo's initial complaint included claims against D&L and Huntington that depended on a finding that the lease was invalid. *Id.* Given that Carrizo brought some claims before the deadline that depended on a determination of the lease's validity or invalidity, the district court saw no reason why Carrizo could not have brought the slander-of-title and breach-of-contract claims before the deadline. *Id.* The district court reasoned that "nothing precluded Carrizo from pleading claims in the alternative." *Id.*

The district court's determination that Carrizo did not show good cause to amend the complaint was not an abuse of its discretion. The district court did not rely on clearly erroneous findings of fact. It relied on the fact that Carrizo knew about Melfi's and Girard's disavowal of the lease before the deadline for amending pleadings, which is undisputed. It also relied on the

fact that Carrizo's original complaint included some claims that depended on a determination of the lease's validity or invalidity, which is also undisputed. The district court did not improperly apply the governing law or use an erroneous legal standard. It accurately stated that in order to show good cause for amending a pleading after the deadline, a party must show that it was diligent. The district court then looked to the facts before it and determined that Carrizo had not been diligent.

## C. Prejudice

"[I]n addition to Rule 16's explicit 'good cause' requirement . . . a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order." *Leary*, 349 F.3d at 909.

The district court held that Girard would be prejudiced by the late amendments because, had Girard known about the slander-of-title and breach-of-contract claims, its decisions regarding whether to join the other parties in seeking bifurcation and regarding settlement would have been better informed. R. 181 (Order at 6) (Page ID #3015). Although the district court does not explicitly discuss damages, it is worth noting that Carrizo was not seeking damages against Girard prior to its proposed amendments.

Carrizo's arguments that the district court abused its discretion are unconvincing. First, Carrizo relies on *Security Insurance Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001 (6th Cir. 1995), to support its contention that Girard did not suffer prejudice, but that case is inapposite. In *Security Insurance*, the dates for discovery cut-off and trial had not yet been set,

let alone elapsed. *Id.* at 1009. In this case, the deadlines have elapsed, and a trial on Phase I has been held. In addition, while *Security Insurance* says that "speculation about what might or might not have occurred in these independent proceedings" falls short of prejudice, the independent proceedings it addresses are a state court action and an individual bankruptcy. *Id.* at 1009. In this case, the district court determined that Girard may have made different strategic decisions in the course of litigating the same case, not independent proceedings. Second, Carrizo argues that Girard did not suffer prejudice because Girard agreed to the bifurcation and "[t]hus, the City was aware that issues related to damages—and any issue other than the validity of the Lease—would and could only be tried during Phase II." App. Br. at 10–11. Similarly, Carrizo contends that because its initial complaint sought to enjoin Girard, Girard "was on notice of the substance of Carrizo's claims." *Id.* at 17. However, Carrizo was not initially seeking damages against Girard and was not even suing Melfi. Neither bifurcation nor the request for an injunction put Girard on notice that Carrizo would seek damages against Girard, let alone seek damages against an entirely new party.

Carrizo's arguments do not show that the district court abused its discretion in determining that Girard would be prejudiced by the late addition of slander-of-title and breach-of-contract claims. The district court did not rely on erroneous findings of fact. It relied on the fact that Carrizo's initial complaint did not reveal its intention to seek damages against Girard. The district court did not improperly apply the governing law or use an erroneous legal standard. It accurately stated that in order to amend a pleading after the deadline, a party must show that

the opposing party would not be prejudiced. It then looked to the facts before it and determined that Girard would be prejudiced.

## D.  Futility of Amendment

Because we affirm the district court's determinations that Carrizo did not show good cause to amend its complaint and that Girard would suffer prejudice from the late amendments, we do not reach the question of whether the amendments would be futile.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.